**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| RYAN INTERNATIONAL AIRLINES, INC., *et al.*[1], | ) |
| | ) Case No. 12-80802 |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**NOTICE OF DEBTORS' EMERGENCY MOTION (A) FOR AUTHORIZATION TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) GRANT PRIMING LIENS AND SECURITY INTERESTS, CLAIMS TO POST-PETITION LENDERS PURSUANT TO 11 U.S.C. § 364(C)(2); (III) PROVIDE ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

To:    All Parties on the Attached Service List

PLEASE TAKE NOTICE that at 1:30 p.m. on March 7, 2012, or as soon thereafter as may be heard, Ryan International Airlines, Inc., *et al.*, shall appear before the Honorable Manuel Barbosa, Judge of the above-entitled Court, or before any judge sitting in his stead, and present the Debtors' Emergency Motion (A) for Authorization to: (I) Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Grant Priming Liens and Security Interests, Claims to Post-Petition Lenders Pursuant to 11 U.S.C. § 364(C)(2); (III) Provide Adequate Protection to Pre-Petition Secured Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (B) Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001, which is hereby served upon you.

Dated: March 6, 2012

/s/Thomas J. Lester
Thomas J. Lester
Matthew M. Hevrin
Hinshaw & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL  61105-1389
(815) 490-4900
Fax:  (815) 490-4901

*Proposed Counsel to the Debtors and Debtors in Possession*

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number include:  Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

## CERTIFICATE OF SERVICE

I, Rhonda I. Young of Hinshaw & Culbertson LLP, hereby certify that a true and correct copy of the foregoing Notice and Debtors' Emergency Motion (A) for Authorization to: (I) Obtain Post-Petition Financing Pursuant to 11 U.S.C. § 364; (II) Grant Priming Liens and Security Interests, Claims to Post-Petition Lenders Pursuant to 11 U.S.C. § 364(C)(2); (III) Provide Adequate Protection to Pre-Petition Secured Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364, and (B) Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001was served on the parties listed on the attached Service List by overnight mail on or about March 6, 2012.

/s/Rhonda I. Young

70811630v1 0932325

## SERVICE LIST

## VIA OVERNIGHT COURIER

| | |
|---|---|
| Office of the United States Trustee<br>Attn: Ms. Carole Ryczek<br>780 Regent Street<br>Suite 304<br>Madison, WI 53715 | Airline Pilots Association, International<br>1625 Massachusetts Avenue NW<br>Washington, D.C. 20036 |
| Transport Workers Union of America, AFL-CIO<br>501 3rd Street NW<br>9th Floor<br>Washington, D.C. 20001 | Internal Revenue Service<br>201 West Rivercenter Blvd.<br>Covington, KY 41011 |
| DFAS-CO/FPS/F<br>DFAS-Columbus Center<br>Attn: DFAS-ADPSD/CA Fuels<br>Columbus, OH 43218-2204 | VRG Linhas Aereas<br>Avenida Vinte De Janeiro Seguimento D<br>CEP 21941-570 |
| Delta Air Lines<br>1030 Delta Blvd.<br>Atlanta, GA 30320-6001 | American Express – 360001<br>US Payment Florida<br>2965 West Corporate Lakes Blvd<br>Weston FL 33331-3626 |
| Virgin Atlantic Airways<br>Manor Royal<br>Crawley<br>West Sussex<br>RH10 9NU | Pratt & Whitney<br>Christchurch Engine Centre<br>Christchurch Int'l Airport 8544<br>14005<br>CHC New Zealand |
| Wells Fargo Bank Northwest, not individually but<br>as Trustee for Triton Aviation International LLC<br>c/o Mr. Jeremy Stamelman<br>Gibson, Dunn & Crutcher LLC<br>200 Park Avenue<br>New York, NY 10166-0193 | LSG Sky Chefs<br>998 W. Army Trail Road<br>Carol Stream, IL 60631 |
| North Shore Aircraft LLC – Lease<br>c/o Wayzata Investment Partners, LLC<br>Attn: Ray Wallander & John McEvoy<br>701 East Lake Street<br>Suite 300<br>Wayzata, MN 55391 | Airbus of North America<br>198 Van Buren Street<br>Herndon, VA 20170 |
| Futura International Airways<br>c/o Klenda, Mitchell, Austeman & Zuercher, LLC<br>Attn: Christopher McElgunn/Michelle Brenwald<br>1600 Epic Center<br>301 North Main<br>Wichita, KS 67202 | US Customs & Border Protection<br>Revenue Division<br>Attn: UserFeeT<br>6650 Telecom Drive<br>Indianapolis, IN 46278 |
| Professional Insurance Management Inc. | Ascent Aviation Services |

| | |
|---|---|
| 2120 Airport Road<br>Wichita, KS 67277 | 6901 S. Park Road<br>Tucson, AZ 85766 |
| Wright Express Financial Srv<br>33548 Treasury Center<br>Chicago, IL 60694-3500 | Piedmont Aviation<br>1031 E. Mountain Street<br>Suite 320<br>Kernersville, NC 27284 |
| LSG Sky Chefs Deutschland<br>Dornhofst 38<br>Neu-Isenburg 63263<br>Germany | McGladrey & Pullen, LLP<br>5155 Paysphere Circle<br>Chicago, IL 60674 |
| DSSN 3801 L1-Craf<br>Attn: Disbursing Operations Director<br>3801 Limestone Field Site<br>P.O. Box 269339<br>Indianapolis, IN 46226-9339 | SFB Fueling, LLC<br>3301 N. Buffalo Drive<br>Suite B-9<br>Las Vegas, NV 89129 |
| Euro Jet Intercontinental<br>12 Mount Havelock<br>Douglas IM72QG | U.S. Jet Services, Inc.<br>3216 S. Nordic Road<br>Arlington Heights, IL 60005 |
| US Airways<br>201 East Jefferson Street<br>Phoenix, AZ 85004 | Cooper & Kirk<br>1523 New Hampshire<br>Washington, D.C. 20036 |
| Boeing Commercial Airplanes<br>P.O. Box 3707<br>Seattle, WA 98124-2207 | Globe Ground North America LLC<br>111 Great Neck Road<br>Suite 320<br>Great Neck, NY 11021 |
| Chicago Aircraft Inc.<br>3216 S. Nordic Road<br>Arlington Heights, IL 60005 | Delta Air Lines<br>c/o David Meadows<br>King & Spaulding, LLP<br>1180 Peachtree Street, NE<br>Atlanta, GA 30309 |
| PNC Equipment Finance LLC<br>c/o Mr. Robert P. Simons<br>Reed Smith LLP<br>225 Fifth Avenue<br>Pittsburgh, PA 15222 | Consultoria -- Mexican Immigration<br>Homero 1832<br>Col Los Morales Polanco<br>Delgacia Miguel Hidalgo<br>C.P. 11510<br>Mexico DF |
| Pan Am Flight Academy<br>5000 Northwest 36th Street<br>Miami, FL 33166-2763 | Baker Botts L.L.P.<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, TX 77002-4995 |

70811630v1 0932325

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| RYAN INTERNATIONAL AIRLINES, INC., | ) |
| *et al.*[1], | ) Case No. 12-80802 |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

## EMERGENCY MOTION (A) FOR AUTHORIZATION TO: (I) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364; (II) GRANT PRIMING LIENS AND SECURITY INTERESTS, CLAIMS TO POST-PETITION LENDERS PURSUANT TO 11 U.S.C. § 364(C)(2); (III) PROVIDE ADEQUATE PROTECTION TO PRE-PETITION SECURED LENDERS PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (B) SCHEDULE A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001

Ryan International Airlines, Inc., Rubloff 757-MSN24794, LLC, Rubloff Ryan, L.L.C., Rubloff/Ryan 80, LLC, Ryan 763BK, L.L.C., Ryan 767, LLC, Sundowner 102, LLC, Sundowner Alexandria, LLC, Sundowner Mesa, LLC, f/k/a Prisoner Transportation Services, LLC, and Sundowner Oklahoma City, LLC and Rubloff Aerospace, L.L.C., as debtors and debtors-in-possession (the "Joint Debtors" and/or "Debtors"), respectfully represent:

### Bankruptcy Rule 4001 Concise Statement[2]

1.     By this motion, the Joint Debtors request: (A) entry of interim and final orders (the "DIP Orders") granting: (i) authorization to obtain post-petition financing pursuant to Sections 105, 361, 362, 364(c)(2), and 507 of Title 11 of the United States Code (the

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number include:  Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

[2]     Capitalized Terms used in this Concise Statement have the meanings ascribed to them in the DIP Term Sheet, unless otherwise defined herein.

"Bankruptcy Code"), (ii) authorization to grant adequate protection pursuant to Sections 361, 363(e), 364(d), 364(d)(1), and 507 of the Bankruptcy Code to the Debtors' pre-petition lender, INTRUST Bank, N.A. ("INTRUST Bank") (collectively, the "Financing Arrangement"). A summary of the Financing Arrangement is set forth in the Priming DIP Facility (the "DIP Term Sheet"), a copy of which is attached hereto as **Exhibit A**. The DIP Term Sheet provides the principal terms and conditions for a final debtor-in-possession financing facility agreement (the "Final DIP Agreement") that will be executed by the Debtors and INTRUST Bank in advance of the final hearing on this motion (the "Final Hearing"). A copy of the proposed interim order (the "Interim Order") regarding the DIP Financing Term Sheet is attached hereto as **Exhibit B**. The Interim Order is subject to continuing review and comment by the Debtors and INTRUST Bank and the Debtors intend to present a final form of the proposed Interim Order (and a blackline reflecting all modifications made to the Interim Order) with the Court at the Final Hearing.

2.      Material provisions of the Financing Arrangement are set out at the following sections of the DIP Term Sheet and/or the Interim Order:

a.      **Borrowing Limits**. INTRUST Bank (the "DIP Lender") agrees to provide the Debtors, as borrowers, a secured priority debtor-in-possession credit facility in an aggregate principal amount of $4.5 million for a revolving advance note, which includes credit card commitments of $500,000.00 (the "DIP Facility"). (DIP Term Sheet ¶Transaction, DIP Facility Amount; Interim Order ¶1)

b.      **Interest Rate, Loan Origination Fee and Post-Petition Attorneys' Fees**. The post-petition loans under the DIP Facility will bear interest at 7.0% per annum. A loan origination fee of one-half of one percent (.005%) of the principal amount of DIP Facility shall additionally be charged. The DIP Lender shall additionally be entitled to reimbursement of its attorneys' fees for the negotiation, preparation, court approval and supervision and monitoring of the DIP Facility in a sum of not more than $50,000.00. The attorneys' fees shall be paid as incurred on a monthly basis.

c.      **Maturity**. The DIP Facility will expire no later than September 10, 2012, or approximately six (6) months after the date of the commencement of the Joint Debtors' Chapter 11 case (the "Maturity Date"), provided, that the Maturity Date

2

may be extended an additional six (6) months upon the DIP Lender's written consent.

d.   **Events of Default.** To be determined by the parties and set forth in the Final DIP Agreement.

e.   **Liens.** INTRUST Bank shall be granted first and priming lien on the collateral as set forth in the prior security agreements as defined in paragraph 4(e) of this Motion (the "Prior Security Agreements") pursuant to 11 U.S.C. §364(c)(1), 11 U.S.C. §364(c)(2) and 11 U.S.C. §364(c)(3) for all post-petition loans and advancements made by the DIP Lender to the Debtors. In addition, INTRUST Bank shall be granted a secured lien under 11 U.S.C. §364(c)(1), 11 U.S.C. §364(c)(2) and 11 U.S.C. §364(c)(3) on its pre-petition loan of approximately $53.2 million.

f.   **Expenses.** The Debtors will pay all recording fees associated with recording of any post-petition liens.

g.   **Conditions.** The DIP Facility shall be conditioned on, among other things, INTRUST Bank's receipt of an initial Cash Flow Budget (defined below) attached as **Exhibit C**, receipt of all necessary consents, finalization of satisfactory legal documentation (including representations and warranties, covenants, events of default and other terms and conditions deemed appropriate by INTRUST Bank for a transaction of this type), and the Bankruptcy Court's entry of interim and final orders approving the DIP Facility.

**Highlighted Provisions under Bankruptcy Rule 4001**

3.   he provisions described in Bankruptcy Rule 4001(c)(1)(B)(i)-(xi), to the extent applicable, are set out in the DIP Term Sheet and the Interim Order:

a.   *Grant of Priority or a Lien on Property of the Estate.* DIP Term Sheet ¶ Security; Interim Order.

b.   *Adequate Protection or Priority for a Claim that Arose before the Commencement of the Case.* Interim Order

c.   *Determination of the Validity, Enforceability, Priority, or Amount of a Claim that Arose before the Commencement of the Case.* Interim Order

d.   *Waiver or Modification of the Automatic Stay.* Interim Order

e.   *Waiver or Modification of Applicability of Non-Bankruptcy Law Relating to the Perfection of a Lien on Property of the Estate, or on the Foreclosure or Other Enforcement of the Lien.* Interim Order

3

f.     ***Release, Waiver, or Limitation on any Claim or Cause of Action Belonging to the Estate.*** Interim Order

g.     ***Release, Waiver or Limitation on Rights under Section 506(c).*** Interim Order

h.     ***Liens Granted on Claims Arising Under Chapter 5.*** Interim Order

i.     ***Waivers by Debtors***:

    i.     ***Challenge application of payments by lender;***

    ii.    ***To assert value of pre-petition collateral is less than pre-petition obligations;***

    iii.   ***Seek relief under the Bankruptcy Code, including, but not limited to extension of stay or injunction under 11 U.S.C. §105;*** and

    iv.    ***Utilization of 11 U.S.C. §105 for other equitable relief.*** Interim Order.

j.     ***Limitation on Carve-out for Professionals.*** Interim Order

k.     ***Excluded Professional Fees.*** Interim Order

4.     In addition, the Debtors draw the Court's attention to certain material provisions of the DIP Term Sheet and in the relief set forth in the attached Interim Order:

a.     **Binding the Estate to Validity, Perfection, or Amount of Secured Debt.** Although the Financing Arrangement includes certain stipulations by the Debtors relating to the validity, amount and perfection of the pre-petition liens, the Financing Arrangement reserves the right of parties in interest, including any committee, to file a motion or application: (i) challenging the amount, validity, enforceability, priority or extent of the Pre-Petition Indebtedness; or (ii) asserting any claims or causes of action against the Pre-Pre-Petition Secured Lenders on behalf of the Debtors' estates. The Interim Order reserves for sixty (60) days after appointment the right of a statutory committee of creditors to challenge the validity or perfection of the liens securing the Pre-Petition Credit Agreement.

b.     **Waiver of Section 506( c) Surcharge.** The proposed waiver of the estates' right will be effective after entry of the Interim DIP Order granting such relief.

c.     **First Lien**. The DIP Term Sheet provides for a first, priming or primary lien for the DIP Facility under 11 U.S.C. §364(d)(1) superior to the interest of all other creditors on the property set forth below:

    The Prior Security Agreements securing the Pre-Petition Credit Facility of the Debtors and as perfected with UCC-1 Financing Statements filed of record in the State of Kansas, State of Illinois, State

4

of Georgia, State of Michigan and State of
Delaware, together with liens on certain airplanes,
which liens are recorded with the Federal Aviation
Association.

d. **Second Lien.** The DIP Term Sheet also provides for a second lien for the pre-petition indebtedness of INTRUST Bank on all property of the Debtors that is otherwise subject to a prior perfected senior lien of a third party lender, which lacks sufficient value in excess of the amount of the Debtors' indebtedness to that third party lender. This lien is granted under the provisions of 11 U.S.C. §364(c)(1), 11 U.S.C. §364(c)(2) and 11 U.S.C. §364(c)(3). Such property is as follows:

> All Assets of all of the Debtors, including, but not
> limited to Rubloff 757, LLC, Rubloff/Ryan 80, LLC
> and Ryan 763BK, L.L.C. (which INTRUST Bank
> previously did not have a lien upon).

e. **Debtors' Acknowledgments and Agreements.** Ryan International has either guaranteed all promissory notes, loan agreements, irrevocable letters of credit of the following debtors and non-debtors or is a co-borrower or co-maker with the following debtors and non-debtors:

- Rubloff Jet Express, LLC;

- Rubloff Ryan, LLC;

- Sundowner 102, LLC;

- Ryan 767 N123, LLC;

- Ryan 767, LLC;

- BransonFunTrip.com, LLC;

- RD Air, LLC;

- INS GSA 084, LLC;

- Sundowner Alexandria, LLC;

- Sundowner Oklahoma City, LLC;

- Sundowner Mesa, LLC;

- Aviation Holdings, LLC.

70808688v2 0932325

In addition, all assets of the Debtors have been cross-collateralized and cross-guarantied under the following loan agreements, guaranties, security agreements and documents of perfection.

The Debtors admit, stipulate, acknowledge and agree that prior to the commencement of these cases, the Debtors, as borrowers, and INTRUST Bank, as lender, executed certain promissory notes, security agreements, assignments, guarantees and other loan documents, including the following:

i.    Loan Agreement(s) dated February 18, 2009, between INTRUST Bank and Rubloff Jet Express, LLC, Ryan International Airlines, Inc., Rubloff Ryan, LLC, Sundowner 102, LLC, Ryan 767 N123, L.L.C., Ryan 767 LLC, BransonFunTrip.com, LLC, RD Air, LLC, INS GSA 084, LLC, Sundowner Alexandria, LLC, Sundowner Oklahoma City, LLC, Sundowner Mesa, LLC, Aviation Holdings, LLC, Ronald D. Swenson, an individual and Gerald H. Weber, Jr., an individual as borrowers and Rubloff Jet Express, LLC, Ryan International Airlines, Inc., Rubloff Ryan, LLC, Sundowner Alexandria, LLC, Sundowner Oklahoma City, LLC, Sundowner Mesa, LLC, Ronald D. Swenson and Gerald H. Weber, Jr. as guarantors;

ii.   Promissory Note Loan No. Sub 46839 dated September 20, 2007, in the principal amount of $747,546.86, entered into by BransonFunTrip.com, LLC ("Branson"), secured by all accounts, contract rights, inventory, equipment, machinery, furnishings, furniture, chattel paper, instruments, general intangibles and rights to payments of every kind (collectively "All Assets") of Branson;

iii.  Promissory Note Loan No. 46436 dated April 27, 2007, in the principal amount of $1,806,140.00, entered into by Rubloff Jet Express, LLC ("Rubloff Jet") and Aviation Holdings, LLC ("Aviation Holdings"), secured by an Aircraft Security Agreement dated April 27, 2007, in the name of Aviation Holdings covering a 1981 Hawker Siddeley HS 125, Series 700A with a FAA Registration No. of N418RD (S/N NA0210) and two (2) Honeywell TFE 731-3-1H engines;

iv.   Promissory Note Loan No. 48548LP dated February 28, 2009, in the principal amount of $15,000,000.00, entered into by Rubloff Jet, Ryan International Airlines, Inc. ("Ryan International"), Sundowner 102, LLC ("Sundowner 102"), Sundowner Alexandria, LLC ("Sundowner Alexandria"), Sundowner Mesa, LLC ("Sundowner Mesa"), Sundowner Oklahoma City, LLC ("Sundower OKC"), INS GSA 084, LLC ("INS") and Rubloff Ryan, LLC ("Rubloff Ryan"), secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, INS, a Pledge Agreement dated September 15, 2007, in the name of Rubloff Ryan covering 95 shares of Ryan International stock, Cert. #4A and 5 shares of Ryan International stock, Cert. #5A (hereinafter the "Stock");

6

v.     Promissory Note Loan No. 48550LP dated February 18, 2009, in the principal amount of $10,028,537.00, entered into by Ryan International and Rubloff Ryan, secured by All Assets and the Stock;

vi.     Promissory Note Loan No. 49426LP dated January 29, 2010, in the principal amount of $5,000,000.00, entered into by Rubloff Jet, Ryan International, Sundowner 102 and Rubloff Ryan, secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102 and Rubloff Ryan, together with an Assignment of Life Insurance dated January 29, 2007, in the name of Gerald H. Weber, Jr. covering Policy No. 020104481, issued by Sun Life Financial, in the amount of $1,000,000.00 on the life of Gerald H. Weber, Jr. and an Assignment of Life Insurance dated March 28, 2007, in the name of Ronald E. Swenson, covering Policy No. 207 033 227, issued by MetLife Investors USA Insurance Company, in the amount of $1,000,000.00 on the life of Ronald E. Swenson (collectively the "Life Insurance Policies");

vii.     Promissory Note Loan No. 49483LP dated February 25, 2010, in the principal amount of $7,724,981.78, entered into by Ryan International, Rubloff Jet, Sundowner 102, Gerald H. Weber, Jr. ("Weber"), Ronald E. Swenson ("Swenson"), Ryan 767, LLC ("Ryan 767"), Ryan 767 N123, LLC ("Ryan 767 N123"), Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, INC and Rubloff Ryan, secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, INS, Rubloff Ryan, Life Insurance Policies, Stock, and Pledge Agreement dated July 30, 2008 in the names of Gerald H. Weber, Jr. and Ronald E. Swenson, covering all membership interest in Rubloff Glade 121, LLC, owned by Gerald H. Weber, Jr. and Ronald E. Swenson;

viii.     Promissory Note Loan No. 49974 dated November 5, 2010, in the principal amount of $2,500,000.00, entered into by Ryan International and Sundowner 102, secured by All Assets of Ryan International and Sundowner 102, together with the Stock;

ix.     Promissory Note Loan No. 50253LP, dated March 9, 2011, in the principal amount of $1,600,000.00, entered into by Ryan International and Sundowner 102, secured by All Assets of Ryan International and Sundowner 102 and the Stock;

x.     Promissory Note Loan No. 50224LP dated February 24, 2011, in the principal amount of $6,725,000.00, entered into by Ryan 767 N123, secured by an All Assets and an Aircraft Security Agreement dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines, together with an Assignment of Lease dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines

7

leased by Ryan 767 N123 to Ryan International dated June 25, 2008 and subsequent amendment dated January 27, 2009;

xi.    Promissory Note Loan No. 51146 dated February 22, 2012, in the principal amount of $862,500.00, entered into by Ryan International Airlines, Inc., secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Prisoner Transportation Services, LLC ("Prisoner") Sundowner OKC, INS, together with the Stock, Life Insurance Policies, Pledge Agreement dated July 30, 2008, in the name of Gerald H. Weber, Jr. and Ronald E. Swenson covering all member interests in Rubloff Glade 121, L.L.C. owned by Gerald H. Weber, Jr. and Ronald E. Swenson, Aircraft Security Agreement dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines, together with an Assignment of Lease dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines and guaranties of Gerald H. Weber, Jr. and Ronald E. Swenson;

xii.   Modification Agreement(s) of the above entitled Promissory Notes;

xiii.  Promissory Note Loan No. 48551LP dated January 13, 2009, in the principal amount of $8,720,530.000, entered into by Gerald H. Weber, Jr. and Ronald E. Swenson, secured by Pledge Agreement dated July 30, 2008 covering all membership interests in Rubloff Glade 121, L.L.C. owned by Gerald H. Weber, Jr. and Ronald E. Swenson, together with Assignment of Life Insurance dated January 29, 2007, covering Policy No. 020104481, issued by Sun Life Financial in the amount of $1,000,000.00 on the life of Gerald H. Weber, Jr. and owned by Gerald H. Weber, Jr.;

xiv.   Irrevocable Letter of Credit dated December 18, 2001, for up to $37,000.00 between Ryan International as Applicant and Port Authority of New York & New Jersey Technical Center as Beneficiary;

xv.    Irrevocable Letter of Credit dated June 12, 2007, for up to $278,000.00 between Ryan International as Applicant and Travelers Casualty and Surety Company of America as Beneficiary;

xvi.   Irrevocable Letter of Credit dated September 18, 2009, for up to $750,000.00 between Ryan International as Applicant and GE Commercial Aviation Services, LLC as Beneficiary:

xvii.  Irrevocable Letter of Credit dated February 12, 2010, for up to $566,304.00 between Ryan International as Applicant and Zurich American Insurance Co. as Beneficiary;

xviii. Irrevocable Letter of Credit dated May 27, 2010, for up to the sum of $260,000.00 between Ryan International as Applicant and Wells Fargo

Bank Northwest, National Association, as Owner Trustee C/O Aircastle Advisor, LLC, as Servicer as Beneficiary;

xix.   Irrevocable Letter of Credit dated December 28, 2010, for up to $10,000.00 between Ryan International as Applicant and City of Los Angeles Department of Airports as Beneficiary;

xx.   Ryan International, Rubloff Ryan, Rubloff Jet, Swenson, Robert S. Brownson, and Weber issued Commercial Guaranties for BransonFunTrip.com, LLC on or about October 6, 2005, in an unlimited amount;

xxi.   Weber and Swenson issued Commercial Guaranties for Rubloff Jet, Ryan International and Rubloff Ryan on or about August 27, 2009, in an unlimited amount;

xxii.   Weber and Swenson issued Commercial Guaranties for Rubloff Jet, Ryan International on or about January 29, 2010, in an unlimited amount;

xxiii.   Rubloff Development Group, Inc, issued a Commercial Guaranty for Ryan International on or about February 12, 2010, in an unlimited amount;

xxiv.   Weber and Swenson issued Commercial Guaranties for Ryan International on or about June 11, 2010, in an unlimited amount;

xxv.   Weber and Swenson issued Commercial Guaranties Ryan International on or about November 5, 2010, in unlimited amount;

xxvi.   Ryan 767 N123 granted an Aircraft Security Agreement in favor of INTRUST Bank pertaining to Loan No. 40224LP and filed of record with the U.S. Department of Transportation Federal Aviation Administration on April 7, 2011, securing a 1987 Boeing 767-332 with FAA Registration No. N123DN (S/N 23437) and two General Electric CF6-80A2 engines (S/N 580349 and 580346);

xxvii.   Aviation Holdings granted an Aircraft Security Agreement in favor of INTRUST Bank pertaining to Loan No. 46436 and filed of record with the U.S. Department of Transportation Federal Aviation Administration on June 6, 2007, securing a 1981 Hawker Siddeley HS, 125 Series 700A with FAA Registration No. N418RD (S/N NA0210) and two Honeywell TFE 731-3-1H aircraft engines (S/N P-75147 and P-75173);

xxviii.   Commercial Security Agreement dated December 29, 2005, granted by Rubloff Jet;

xxix.   Commercial Security Agreement dated September 20, 2006, granted by Ryan International;

70808688v2 0932325

xxx.   Commercial Security Agreement dated February 18, 2009, granted by Sundowner 102;

xxxi.   Commercial Pledge Agreement dated September 15, 2007, granted by Rubloff Ryan;

xxxii.   Commercial Security Agreement dated November 19, 2004, granted by Sundowner Alexandria;

xxxiii.   Commercial Security Agreement dated January 26, 2005, granted by Pioneer Transportation Services, LLC and Sundowner Mesa;

xxxiv.   Commercial Security Agreement dated November 30, 2004, granted by Sundowner OKC;

xxxv.   Commercial Security Agreement dated May 3, 2007, granted by INS;

xxxvi.   Commercial Security Agreement dated October 6, 2005, granted by Branson;

xxxvii.   Commercial Security Agreement dated January 26, 2006 granted by Sundowner Mesa, LLC;

xxxviii.   Commercial Security Agreement dated February 24, 2011 granted by Ryan 767 N123;

xxxix.   Various UCC-1 Financing Statements setting forth the perfected security interest of INTRUST Bank in All Assets filed for record in the State of Kansas, State of Illinois, State of Georgia, State of Michigan and State of Delaware.

The pre-petition loans, security agreements and documents of perfection as set forth in this paragraph are hereinafter referred to as the **"Pre-Petition Indebtedness."**.

5.   These provisions were negotiated and are necessary for the Debtors to procure the financing made available under the DIP Term Sheet in a sufficient amount and on a timely basis.

## Background

6.   On March 6, 2012, each of the Debtors filed a voluntary petition in this Court for reorganization relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and

10

1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these Chapter 11 Cases.

## I.   Business of the Debtors

7.   The Debtors are providers of military passenger and commercial charter air transportation services. The Debtors are primarily a commercial provider of air transportation for the Department of Defense, the U.S. Marshall's Services and other government agencies. The Debtors operate their businesses through Ryan with Aircraft leased or owned by the other Debtors. The Debtors operate a diverse fleet of passenger aircraft, employ approximately 468 employees and have annual revenues of more than $244,000,000.00.

8.   A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' Chapter 11 cases, are set forth in greater detail in the Declaration of Mark A. Robinson, Executive Vice President of Ryan, in Support of First Day Pleadings (the "First Day Declaration"), filed contemporaneously herewith.

## II.   Events Leading to Chapter 11 Filing

9.   Recently, the Debtors have encountered various financial and operational hurdles, due in part to a decreased demand for military and passenger services. In an effort to facilitate a comprehensive restructuring of the Debtors' businesses, on the date hereof (the "Commencement Date"), each of the Debtors commenced cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors have requested procedural consolidation and joint administration of these Chapter 11 cases. No request for the appointment of a trustee or examiner has been made in these Chapter 11 cases, and no committees have been appointed or designated.

70808688v2 0932325

## Jurisdiction and Venue

10.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

11.    The Debtors request that the Court authorize Ryan International Airlines, Inc., as

Borrower, as debtor and debtor-in-possession in this Chapter 11 case, to obtain a senior secured,

priority, post-petition loan up to the aggregate principal amount of $4.5 million from INTRUST

Bank, pursuant to the terms of this Motion, the Interim Order, any Final DIP Order (defined

below), the DIP Term Sheet, and the Final DIP Agreement.

12.    Pursuant to the proposed Financing Arrangement, the post-petition financing

provided by the DIP Lender, will pursuant to Section 364(d)(1) of the Bankruptcy Code, be

secured by a perfected first priority lien on the collateral as set forth in the Prior Security

Agreements and in this Motion.

13.    In addition, the Pre-Petition Indebtedness of the Pre-Petition Loan Participant

shall, as additional consideration for the post-petition financing, be granted a lien securing the

Pre-Pre-Petition Indebtedness of $53.2 million. The Post-Petition Indebtedness shall be secured

by the collateral as set forth in Prior Security Agreements in the sum of $4.5 million, together

with other property and property interests of the Debtors in all assets as set forth in paragraph

4.c. of this Motion.   The Debtors submit that the Pre-Petition Secured Lender is adequately

protected as described herein and in the Interim Order.

14.    Pending the entry of the final order approving the DIP Facility (the "Final DIP

Order"), the Debtors request that the Court (A) authorize the Debtors, on an interim basis: (i) to

borrow up to $4,500,000.00 under the DIP Facility on an interim basis pending final approval of

12

the DIP Facility; (ii) to grant to the DIP Lender the liens described herein and in the Interim Order; and (iii) to provide adequate protection in favor of INTRUST Bank, as described herein and in the Interim Order; (B) approve the proposed notice of the final hearing to consider approval of the DIP Facility (the "Final Hearing") and the adequacy of the proposed service thereof; and (C) schedule the Final Hearing.

### The Pre-Petition Credit Agreement

15.     Prior to the Commencement Date, INTRUST Bank made certain loans and other extensions of credit to the Debtors pursuant to and in accordance with the terms and conditions of a credit agreement (the "Pre-Petition Credit Agreement," and together with all other documentation executed in connection therewith, the "Pre-Petition Loan Documents").

16.     As of the Commencement Date, the Debtors remained obligated to INTRUST Bank in the approximate sum of $53.2 million.

### Debtors' Proposed Post-Petition Financing Arrangements

**A.     Need for Post-petition Financing**

17.     The Debtors lack sufficient funds with which to operate its business on an ongoing basis. Absent granting of its post-petition financing, the Debtors will lack adequate funds to meet short term business operations and will cease business operations by March 15, 2012. Accordingly, pending this Court's approval of post-petition financing, the Debtors have an urgent and immediate need for cash to continue to operate its business. No entity holds a lien on Debtors' cash or account receivables, however, insufficient funds exist to meet operating expenses. The Debtors have an immediate need of over $4.5 million in funds to avoid immediate and irreparable harm. The DIP Lender is unwilling to loan post-petition funds without the knowledge that it will have a secured second lien on the collateral as set forth in the Prior Security Agreements for the Pre-Petition Indebtedness.

13

**B.    Background of the Post-Petition Financing Arrangement**

18.    Prior to the Commencement Date and thereafter, the Debtors surveyed various sources of post-petition cash to meet operating expenses, including grants or gifts from key contributors.

19.    Because the Debtors were unable to find a lender or benefactor willing to extend credit or make gifts sufficient to meet the needs of current operating expenses, the Debtors were left with no alternative but to seek a priming post-petition financing facility.

20.    Consequently, the Debtors have determined that entering into the DIP Term Sheet with the DIP Lender is appropriate under the circumstances, addresses the Debtors' working capital and liquidity needs, and should be approved.

**C.    Implementation of the DIP Term Sheet**

21.    The Debtors and the DIP Lender engaged in extensive, arm's length negotiations with respect to the terms and conditions of the proposed DIP Facility. These negotiations culminated in agreement upon the proposed financing, including the form of the DIP Term Sheet. Significantly, the DIP Term Sheet allows the Debtors to immediately use up to a $4.5 million commitment from the DIP Lender, subject only to this Court's entry of the Interim Order. This sum, together with all Pre-Petition Indebtedness of the Debtors, shall be secured by collateral as set forth in the Prior Security Agreements, together with all post-petition assets of any sort under the provisions of 11 U.S.C. §364(d)(1) and 11 U.S.C. §364(c)(2), together with a pledge of all Chapter 5 actions under the Bankruptcy Code.  This commitment should allow the Debtors to meet all of its post-petition obligations during the early stages of this Chapter 11 case and to pay certain critical pre-petition venders and parties and satisfy all cash flow needs to allow reorganization of the Debtors.

14

22.     The DIP Term Sheet provides that the funds available under the DIP Facility will be available to provide the Debtors with working capital and funds for other general corporate purposes solely in accordance with a detailed monthly budget (the "Budget"). A variation of five percent (5%) shall be allowed in any line item of the Budget. A cumulative total of five percent (5%) variation shall be allowed in the cumulative totals of the Budget. Any variation greater than these percentages shall be deemed an Event of Default under the interim or final orders.

23.     INTRUST Bank is entitled, pursuant to Sections 105, 361,363, and 364 of the Bankruptcy Code, to adequate protection of its interest. As adequate protection and as additional consideration for extension of the post-petition financing, INTRUST Bank shall be granted a valid, perfected, security interest in and lien the collateral as set forth in the Prior Security Agreements, together with a grant of a post-petition security interest under 11 U.S.C. §364(d)(1) on all post-petition assets and on any pre-petition asset of the Debtors in which there is sufficient value in excess of the prior perfected pre-petition senior lien of a third party lender not otherwise subject to avoidance (as defined in the Interim Order).

24.     The Debtors also propose, as adequate protection, to pay INTRUST Bank to reduce the outstanding principal balance of the Pre-Petition Indebtedness, all proceeds from a sale, lease or other disposition of the Collateral (as defined in the Interim Order), after deducting necessary costs of the Debtors in connection therewith, provided, that all of the Debtors' obligations under the DIP Facility have been paid in full, all commitments under the DIP Facility have been terminated.

25.     In addition, the Debtors propose to grant and/or pay the Pre-Petition Secured Lender the following as adequate protection:

a.     Interest on all post-petition advancements under the post-petition credit facility;

15

b.    Interest on the Pre-Petition Indebtedness secured by the post-petition liens granted
herein; and

c.    Debtors shall waive all claims and causes of action under Chapter 5 of the U.S.
Bankruptcy Code against INTRUST Bank.

### The DIP Facility Should Be Authorized

26.    The Debtors have limited cash availability and without having a loan

advancement of $4.5 million will be unable to continue in business. The existing cash resources

of the Debtors are not sufficient to operate the business beyond a very short period. Approval of

the DIP Term Sheet will provide the Debtors with immediate and ongoing access to borrowing

availability to pay its current and ongoing operating expenses. Unless these expenditures are

made, the Debtors could be forced to cease operations, which could result in irreparable harm to

other creditors. The credit provided under the DIP Facility will enable the Debtors to continue to

satisfy its clients' and vendors' needs, provide services, pay its employees, and operate its

business in the ordinary course and in an orderly and reasonable manner to preserve and enhance

the value of their estates for the benefit of all parties in interest. The availability of credit under

the DIP Facility will also provide confidence to the Debtors' creditors that will enable and

encourage them to continue their relationships with the Debtors. Finally, the implementation of

the DIP Facility will be viewed favorably by the Debtors' employees, vendors, and clients,

thereby promoting continuation of the business. Accordingly, the timely approval of the relief

requested herein is imperative.

27.    The Debtors propose to obtain the financing set forth in the DIP Facility by

providing, inter alia, security interests, and liens pursuant to Sections 364(c)(2) and (d) of the

Bankruptcy Code.

28.    Section 364(c) of the Bankruptcy Code provides, among other things, that if a

debtor is unable to obtain unsecured credit allowable as an administrative expense under Section

16

503(b)(1) of the Bankruptcy Code, the Court may authorize the debtor to obtain credit or incur

debt: (a) with priority over any or all administrative expenses as specified in Section 503(b) or

507(b) of the Bankruptcy Code; (b) secured by a lien on property of the estate that is not

otherwise subject to a lien; or (c) secured by a junior lien on property of the estate that is subject

to a lien.

29.     Section 364(d)(i) of the Bankruptcy Code further provides that the Court, after

notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a

senior or equal lien on property of the estate that is subject to a lien only if:

a.      the trustee is unable to obtain such credit otherwise; and

b.      there is adequate protection of the interest of the holder of the lien on the property
        of the estate on which such senior or equal lien is proposed to be granted. 11
        U.S.C. § 364(d)(1).

30.     The Debtors' liquidity needs can be satisfied only if the Debtors are immediately

authorized to borrow up to $4.5 million under the DIP Facility and to use such proceeds to fund

its operations. The Debtors have been unable to procure sufficient financing in the form of

unsecured credit allowable under Section 503(b)(1), as an administrative expense under Section

364( a) or (b), or in exchange for the grant of a superpriority administrative expense claim

pursuant to Section 364(c)(1). The Debtors have not been able to obtain post-petition financing

or other financial accommodations from any alternative prospective lender or group of lenders

on more favorable terms and conditions than those for which approval is sought herein.

31.     Having determined that financing is available only under Sections 364(c) and (d)

of the Bankruptcy Code, the Debtors negotiated with the DIP Lender extensively and at arm's

length. Provided that a debtor's business judgment does not run afoul of the provisions of, and

policies underlying the Bankruptcy Code, Courts grant a debtor considerable deference in acting

in accordance therewith. *See, e.g., Bray* v. *Shenandoah Fed. Sav. & Loan Ass 'n (In re Snowshoe*

70808688v2 0932325

*Co.),* 789 F.2d 1085,1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.,* 115 B.R. 34, 40 (Banla.

S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be

utilized on grounds that permit reasonable business judgment to be exercised so long as the

financing agreement does not contain terms that leverage the bankruptcy process and powers or

its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In*

*re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod. Co.,*

47 B.R. 444,449 (Bankr. D. Colo. 1985).

32.     Furthermore, Section 364 does not require that a debtor seek alternative financing

from every possible lender; rather, the debtor simply must demonstrate sufficient efforts to obtain

financing without the need to grant a senior lien. *In re Snowshoe Co.,* 789 F.2d at 1088

(demonstrating that credit was unavailable absent the senior lien by establishment of

unsuccessful contact with other financial institutions in the geographic area); *In re 495 Central*

*Park Ave, Corp.,* 136 B.R. 626,631 (Bankr. S.D.N.Y. 1992) (debtor testified to numerous failed

attempts to procure financing from various sources, explaining that "most lend money only in

return for a senior secured position).

33.     The terms and conditions of the DIP Facility are fair and reasonable, and were

negotiated extensively by well-represented, independent parties in good faith and at arm's length.

Accordingly, the DIP Lender and all obligations incurred under the DIP Facility should be

accorded the benefits of section 364( e) of the Bankruptcy Code.

### The Proposed Adequate Protection Should Be Authorized

34.     Section 363(e) of the Bankruptcy Code provides that:

> "on request of an entity that has an interest in property used ... or
> proposed to be used ... by [a debtor in possession], the court, with
> or without a hearing, shall prohibit or condition such use ... as is
> necessary to provide adequate protection of such interest." 11
> U.S.C. §363(e)

18

Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case-by-case basis. *See MNBank Dallas, NA.* v. *O'Conner (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987) ("the courts have considered 'adequate protection' a concept which is to be decided flexibly on the proverbial 'case-by-case' basis"); *Martin* v. *Us. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985) ("adequate protection, must... be determined on a case-by-case basis, permitting debtors maximum flexibility in structuring a proposal for adequate protection."); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) (same). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citation omitted).

### The Automatic Stay Should Be Modified On A Limited Basis

35.     The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtors to: (i) grant the security interests, liens, and superpriority claims described above with respect to the DIP Lenders, as the case may be, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) implement the terms of the proposed interim and final orders; and (iii) marshal the assets of for the mutual benefit of the Debtors on the one hand and INTRUST Bank on the other hand.

36.     Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtors' business judgment, are reasonable and fair under the present circumstances.

19

70808688v2 0932325

### Interim Approval Should Be Granted

37.     Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary, expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

38.     Pursuant to Bankruptcy Rules 4001 (b) and (c), the Debtors request that the Court conduct an expedited, preliminary hearing on this Motion and: (a) authorize the Debtors to use up to $4.5 million under the DIP Facility on an interim basis, pending entry of a final order to: (i) maintain and finance the ongoing operations of the Debtors, and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estate and all parties in interest; and (b) schedule a hearing to consider entry of a final order.

39.     The Debtors have an urgent and immediate need for cash to continue to operate. Currently, the Debtors do not have sufficient funds with which to operate their businesses on an ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the motion, the Debtors will be immediately and irreparably harmed.  Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtors' businesses, to the detriment of all parties in interest. Furthermore, the lack of an interim facility would result in accelerated cash demands on the Debtors. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtors and facilitating their reorganization efforts.

70808688v2 0932325

## Waiver of Bankruptcy Rules 6004(A) and (H)

40.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

The Debtors have provided notice of this motion to:  (a) the United States Trustee for Region 11; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to any statutory committee appointed in these Chapter 11 cases; (d) counsel to INTRUST Bank, N.A., the primary secured lender; (e) Airline Pilots Association, International; (f) Transport Workers Union of America, AFL-CIO; and (g) the Internal Revenue Service.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

41.    No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially similar to the proposed form of order attached hereto, granting the relief requested herein and such other and further relief as the Court may deem just.

Dated: _____     /s/ Thomas J. Lester
                                    Thomas J. Lester
                                    Matthew M. Hevrin
                                    Hinshaw & CULBERTSON LLP
                                    100 Park Avenue
                                    P.O. Box 1389
                                    Rockford, IL  61105-1389
                                    (815) 490-4900
                                    Fax:  (815) 490-4901

                                    *Proposed Counsel to the Debtors and Debtors in Possession*