## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | Chapter 11 |
| RYAN INTERNATIONAL AIRLINES, INC., *et al.*[1] | ) | |
| | ) | Case No. 12-80802 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### FINAL ORDER AUTHORIZING USE OF
### CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION AND
### ADMINISTRATIVE EXPENSE PRIORITY TO INTRUST BANK, N.A.
### BUT CONTINUING HEARING ON BEHALF OF THE OFFICIAL UNSECURED
### CREDITORS' COMMITTEE TO MARCH 28, 2012 TO
### CONSIDER ITS COMMENTS OR OBJECTIONS

This matter comes on for hearing on the 21st day of March, 2012, on the Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection and Administrative Expense Priority to INTRUST Bank, N.A. authorizing the use of cash collateral and granting adequate protection and administrative expense priority to INTRUST Bank, N.A. ("INTRUST Bank"). The debtors, Ryan International Airlines, Inc., Rubloff 757-MSN24794, LLC, Rubloff Ryan, L.L.C., Rubloff/Ryan 80, LLC, Ryan 763BK, L.L.C., Ryan 767, LLC, Sundowner 102, LLC, Sundowner Alexandria, LLC, Sundowner Mesa, LLC, fka Prisoner Transportation Services, LLC, Sundowner Oklahoma City, LLC, and Rubloff Aerospace, LLC (the "Joint Debtors" and/or "Debtors") appear by and through their counsel of record, Thomas J. Lester of Hinshaw & Culbertson, LLP. INTRUST Bank, N.A. appears by and through its counsel of

---

[1]     The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number include: Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

record, Thomas P. Sandquist of WilliamsMcCarthy, L.L.P. and Edward J. Nazar of Redmond & Nazar, L.L.P.  Other appearances are as set forth in the record.

WHEREUPON THE COURT, upon reviewing the file, pleadings and hearing statements of counsel, FINDS:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    Petition.  On or about March 6, 2012 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties a debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Jurisdiction and Venue.  The Court has jurisdiction of this matter and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334.  Venue over this Motion is proper under 28 U.S.C. §§1408 and 1409.  This Motion is a "core" proceeding as defined in 28 U.S.C. §157(b)(2).

3.    Notice.  Notice of this Motion for relief has been given by the Debtors under Bankruptcy Rule 4001(c) as set forth in the record before the Court.

4.    Debtors' Acknowledgments and Agreements.   The Debtors admit, stipulate, acknowledge and agree that prior to the commencement of these cases, the Debtors, as borrowers, and INTRUST Bank, as lender, executed certain promissory notes, security agreements, assignments, guarantees and other loan documents, including, but not limited to the following:

    a.    Loan Agreement(s) dated February 18, 2009, between INTRUST Bank and Rubloff Jet Express, LLC, Ryan International Airlines, Inc., Rubloff Ryan, LLC, Sundowner 102, LLC, Ryan 767 N123, L.L.C., Ryan 767, LLC, BransonFunTrip.com, LLC, RD Air, LLC, INS GSA 084, LLC, Sundowner Alexandria, LLC, Sundowner Oklahoma City, LLC, Sundowner Mesa, LLC, Aviation Holdings, LLC, Ronald D. Swenson, an individual and Gerald H. Weber, Jr., an individual as borrowers and Rubloff Jet Express, LLC, Ryan International

2

70819662v1  0932325

Airlines, Inc., Rubloff Ryan, LLC, Sundowner Alexandria, LLC, Sundowner Oklahoma City, LLC, Sundowner Mesa, LLC, Ronald D. Swenson and Gerald H. Weber, Jr. as guarantors;

b.     Promissory Note Loan No. Sub 46839 dated September 20, 2007, in the principal amount of $747,546.86, entered into by BransonFunTrip.com, LLC ("Branson"), secured by all accounts, contract rights, inventory, equipment, machinery, furnishings, furniture, chattel paper, instruments, general intangibles and rights to payments of every kind (collectively "All Assets") of Branson;

c.     Promissory Note Loan No. 46436 dated April 27, 2007, in the principal amount of $1,806,140.00, entered into by Rubloff Jet Express, LLC ("Rubloff Jet") and Aviation Holdings, LLC ("Aviation Holdings"), secured by an Aircraft Security Agreement dated April 27, 2007, in the name of Aviation Holdings covering a 1981 Hawker Siddeley HS 125, Series 700A with a FAA Registration No. of N418RD (S/N NA0210) and two (2) Honeywell TFE 731-3-1H engines;

d.     Promissory Note Loan No. 48548LP dated February 28, 2009, in the principal amount of $15,000,000.00, entered into by Rubloff Jet, Ryan International Airlines, Inc. ("Ryan International"), Sundowner 102, LLC ("Sundowner 102"), Sundowner Alexandria, LLC ("Sundowner Alexandria"), Sundowner Mesa, LLC ("Sundowner Mesa"), Sundowner Oklahoma City, LLC ("Sundower OKC"), INS GSA 084, LLC ("INS") and Rubloff Ryan, LLC ("Rubloff Ryan"), secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, and INS, and a Pledge Agreement dated September 15, 2007, in the name of Rubloff Ryan covering 95 shares of Ryan International stock, Cert. #4A and 5 shares of Ryan International stock, Cert. #5A (hereinafter the "Stock");

e.     Promissory Note Loan No. 48550LP dated February 18, 2009, in the principal amount of $10,028,537.00, entered into by Ryan International and Rubloff Ryan, secured by All Assets and the Stock;

f.     Promissory Note Loan No. 49426LP dated January 29, 2010, in the principal amount of $5,000,000.00, entered into by Rubloff Jet, Ryan International, Sundowner 102 and Rubloff Ryan, secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, and Rubloff Ryan, together with an Assignment of Life Insurance dated January 29, 2007, in the name of Gerald H. Weber, Jr. covering Policy No. 020104481, issued by Sun Life Financial, in the amount of $1,000,000.00 on the life of Gerald H. Weber, Jr. and an Assignment of Life Insurance dated March 28, 2007, in the name of Ronald E. Swenson, covering Policy No. 207 033 227, issued by MetLife Investors USA Insurance Company, in the amount of $1,000,000.00 on the life of Ronald E. Swenson (collectively the "Life Insurance Policies");

g.     Promissory Note Loan No. 49483LP dated February 25, 2010, in the principal amount of $7,724,981.78, entered into by Ryan International, Rubloff Jet,

70819662v1 0932325

Sundowner 102, Gerald H. Weber, Jr. ("Weber"), Ronald E. Swenson ("Swenson"), Ryan 767, LLC ("Ryan 767"), Ryan 767 N123, LLC ("Ryan 767 N123"), Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, INS and Rubloff Ryan, secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Sundowner OKC, INS, Rubloff Ryan, Life Insurance Policies, Stock, and a Pledge Agreement dated July 30, 2008 in the names of Gerald H. Weber, Jr. and Ronald E. Swenson, covering all membership interest in Rubloff Glade 121, LLC, owned by Gerald H. Weber, Jr. and Ronald E. Swenson;

h.  Promissory Note Loan No. 49974 dated November 5, 2010, in the principal amount of $2,500,000.00, entered into by Ryan International and Sundowner 102, secured by All Assets of Ryan International and Sundowner 102, together with the Stock;

i.  Promissory Note Loan No. 50253LP, dated March 9, 2011, in the principal amount of $1,600,000.00, entered into by Ryan International and Sundowner 102, secured by All Assets of Ryan International and Sundowner 102 and the Stock;

j.  Promissory Note and Commercial Security Agreement Loan No. 50224LP dated February 24, 2011, in the principal amount of $6,725,000.00, entered into by Ryan 767 N123, secured by an All Assets and an Aircraft Security Agreement dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines, together with an Assignment of Lease dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines leased by Ryan 767 N123 to Ryan International dated June 25, 2008 and subsequent amendment dated January 27, 2009;

k.  Promissory Note Loan No. 51146 dated February 22, 2012, in the principal amount of $862,500.00, entered into by Ryan International Airlines, Inc., secured by All Assets of Rubloff Jet, Ryan International, Sundowner 102, Sundowner Alexandria, Sundowner Mesa, Prisoner Transportation Services, LLC ("Prisoner"), Sundowner OKC, INS, together with the Stock, Life Insurance Policies, a Pledge Agreement dated July 30, 2008, in the name of Gerald H. Weber, Jr. and Ronald E. Swenson covering all member interests in Rubloff Glade 121, L.L.C. owned by Gerald H. Weber, Jr. and Ronald E. Swenson, Aircraft Security Agreement dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines, together with an Assignment of Lease dated February 24, 2011, covering a 1987 Boeing 767-332 with a FAA Registration No. of N123DN (S/N 23437) with two General Electric CF6-80A2 engines, and guaranties of Gerald H. Weber, Jr. and Ronald E. Swenson;

l.  Modification Agreement(s) of the above entitled Promissory Notes;

70819662v1 0932325

m.   Promissory Note Loan No. 48551LP dated January 13, 2009, in the principal amount of $8,720,530.000, entered into by Gerald H. Weber, Jr. and Ronald E. Swenson, secured by a Pledge Agreement dated July 30, 2008 covering all membership interests in Rubloff Glade 121, L.L.C. owned by Gerald H. Weber, Jr. and Ronald E. Swenson, together with Assignment of Life Insurance dated January 29, 2007, covering Policy No. 020104481, issued by Sun Life Financial in the amount of $1,000,000.00 on the life of Gerald H. Weber, Jr. and owned by Gerald H. Weber, Jr.;

n.   Irrevocable Letter of Credit dated December 18, 2001, for up to $37,000.00 between Ryan International as Applicant and Port Authority of New York & New Jersey Technical Center as Beneficiary;

o.   Irrevocable Letter of Credit dated June 12, 2007, for up to $278,000.00 between Ryan International as Applicant and Travelers Casualty and Surety Company of America as Beneficiary;

p.   Irrevocable Letter of Credit dated September 18, 2009, for up to $750,000.00 between Ryan International as Applicant and GE Commercial Aviation Services, LLC as Beneficiary;

q.   Irrevocable Letter of Credit dated February 12, 2010, for up to $566,304.00 between Ryan International as Applicant and Zurich American Insurance Co. as Beneficiary;

r.   Irrevocable Letter of Credit dated May 27, 2010, for up to the sum of $260,000.00 between Ryan International as Applicant and Wells Fargo Bank Northwest, National Association, as Owner Trustee C/O Aircastle Advisor, LLC, as Servicer as Beneficiary;

s.   Irrevocable Letter of Credit dated December 28, 2010, for up to $10,000.00 between Ryan International as Applicant and City of Los Angeles Department of Airports as Beneficiary;

t.   Ryan International, Rubloff Ryan, Rubloff Jet, Swenson, Robert S. Brownson, and Weber  issued Commercial Guaranties on or about October 6, 2005, in an unlimited amount;

u.   Weber and Swenson issued Commercial Guaranties on or about August 27, 2009, in an unlimited amount;

v.   Weber and Swenson issued Commercial Guaranties on or about January 29, 2010, in an unlimited amount;

w.   Rubloff Development Group, Inc, issued a Commercial Guaranty on or about February 12, 2010, in an unlimited amount;

70819662v1 0932325

x.   Weber and Swenson issued Commercial Guaranties on or about June 11, 2010, in an unlimited amount;

y.   Weber and Swenson issued Commercial Guaranties on or about November 5, 2010, in unlimited amount;

z.   Ryan 767 N123 granted an Aircraft Security Agreement in favor of INTRUST Bank pertaining to Loan No. 40224LP and filed of record with the U.S. Department of Transportation Federal Aviation Administration on April 7, 2011, securing a 1987 Boeing 767-332 with FAA Registration No. N123DN (S/N 23437) and two General Electric CF6-80A2 engines (S/N 580349 and 580346);

aa.   Aviation Holdings granted an Aircraft Security Agreement in favor of INTRUST Bank pertaining to Loan No. 46436 and filed of record with the U.S. Department of Transportation Federal Aviation Administration on June 6, 2007, securing a 1981 Hawker Siddeley HS, 125 Series 700A with FAA Registration No. N418RD (S/N NA0210) and two Honeywell TFE 731-3-1H aircraft engines (S/N P-75147 and P-75173);

bb.   Commercial Security Agreement dated December 29, 2005, granted by Rubloff Jet;

cc.   Commercial Security Agreement dated September 20, 2006, granted by Ryan International;

dd.   Commercial Security Agreement dated February 18, 2009, granted by Sundowner 102;

ee.   Commercial Pledge Agreement dated September 15, 2007, granted by Rubloff Ryan;

ff.   Commercial Security Agreement dated November 19, 2004, granted by Sundowner Alexandria;

gg.   Commercial Security Agreement dated January 26, 2005, granted by Pioneer Transportation Services, LLC and Sundowner Mesa;

hh.   Commercial Security Agreement dated November 30, 2004, granted by Sundowner OKC;

ii.   Commercial Security Agreement dated May 3, 2007, granted by INS;

jj.   Commercial Security Agreement dated October 6, 2005, granted by Branson;

kk.   Various UCC-1 Financing Statements setting forth the perfected security interest of INTRUST Bank in All Assets.

70819662v1 0932325

5.　　Pre-Petition Loan Credit Facility.　The promissory notes, security agreements, assignments and others documents set forth above in paragraph 4 are collectively referred to as the "**Pre-Petition Credit Facility.**"

6.　　Pre-Petition Obligations.　As of the Petition Date, the aggregate principal amount of all obligations owing by the Debtors under and in connection with the Pre-Petition Credit Facility was not less than approximately $53.2 million, plus interest accrued and accruing thereunder, together with all costs, fees and other charges not included in such amount, including any fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code (the "**Pre-Petition Obligations**").　The Pre-Petition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Debtors pursuant to the terms thereof, are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind, nature or description, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Obligations.　The value of assets securing the Pre-Petition Credit Facility and Pre-Petition Obligations is not less than the Pre-Petition Obligations.

7.　　Pre-Petition Liens.　As of the Petition Date, the Pre-Petition Obligations are secured by first priority, valid, binding, perfected and enforceable liens and security interests (the "Pre-Petition Liens") granted by the Debtors to INTRUST Bank under the Pre-Petition Credit Facility documents, on and in substantially all of the Debtors' assets as more fully described in the Pre-Petition Credit Facility documents (all such property, as the same existed on or prior to the Petition Date, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Pre-Petition Collateral**").　The Pre-Petition Liens on and security interests in the Pre-

70819662v1 0932325

Petition Collateral are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law. The value of the Pre-Petition Collateral equals or exceeds the Pre-Petition Obligations.

8.     <u>Cash Collateral</u>. All of the cash of the Debtors in existence on the Petition Date and all cash that is acquired by the Debtors after the Petition Date as proceeds of Pre-Petition Collateral constitutes cash collateral (the "**Cash Collateral**") within the meaning of Section 363(a) of the Bankruptcy Code for the benefit of INTRUST Bank.

9.     <u>Guaranties</u>. Gerald H. Weber, Jr. and Ronald E. Swenson are guarantors pursuant to written guaranty agreements as more fully set forth above. In addition, the Gerald H. Weber, Jr. and Patti R. Weber Trust dated November 29, 2005 shall become guarantors of the debt secured by the Pre-Petition Credit Facility of INTRUST Bank and any Post-Petition extension of credit under 11 U.S.C. §364(c) and 11 U.S.C. §364(d)(1).

10.     <u>Release</u>. Upon entry of this Final Order, the Debtors shall hereby release, discharge and acquit INTRUST Bank and each of its officers, directors, agents, attorneys, predecessors in interest and successors and assigns, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations of every type, which occurred on or prior to the granting of an Order with respect to or in connection with the Pre-Petition Credit Facility, the Pre-Petition Obligations and the Pre-Petition Liens. Other creditors and parties in interest shall have sixty (60) days from the entry of the Interim Order on March 7, 2012, to challenge the perfection of INTRUST Bank or the terms and conditions of the Pre-Petition Credit Facility and the Pre-Petition Obligations and the representation, warranties and admissions of the Debtors as contained in this Motion.

70819662v1 0932325

11.    Post-Petition Use of Cash Collateral. INTRUST Bank consents to the Debtors' use of Cash Collateral and other financial accommodations on the terms and conditions set forth in this Final Order.

12.    Extension of Existing Pre-Petition Credit Facility and Pre-Petition Obligations. The extension of maturity of the Debtors' Promissory Notes as deemed necessary by INTRUST Bank is approved. To the extent necessary, any stay or injunction issued under 11 U.S.C. §362 shall be lifted or relief granted for the purposes of entering into any post-petition amendments of Pre-Petition Credit Facility and the Pre-Petition Obligations to extend the respective maturity dates.

13.    Need for Use of Cash Collateral and Related Financial Accommodations. The Debtors do not have sufficient sources of working capital, including cash collateral, to continue the orderly operation of their businesses and administration of their estates. Accordingly, the access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral is vital to the operation and maintenance of the Debtors' estates and is necessary to maximize the recovery to which creditors of the Debtors are entitled.

14.    Budget. The Debtors, in consultation with INTRUST Bank, have prepared and delivered to INTRUST Bank a budget (the "**Budget**"), which is annexed hereto as **Exhibit A**. Such Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, the projected disbursements for the periods covered thereby. The Debtors represent in their good faith determination that the Budget is achievable in accordance with the terms herein and will allow the Debtors to operate at all times during these cases without the accrual of unpaid administrative expenses. A variation of five percent (5%) shall be allowed in any line item of the Budget. A cumulative total of five percent (5%) variation shall be allowed in

70819662v1 0932325

the cumulative totals of the Budget. Any variation greater than these percentages shall be deemed an Event of Default under the interim or final orders.

15. <u>Business Judgment and Good Faith</u>. The Debtors submit that the use of Cash Collateral and the grant of adequate protection liens hereunder is fair, just and reasonable under the circumstances and reflects the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of this Final Order have been negotiated in good faith and at arm's length by and among the Debtors, on the one hand, and INTRUST Bank, on the other hand, with all parties being represented by counsel. Any credit extended under the terms of this Final Order through the use of Cash Collateral shall be deemed to have been extended in good faith by INTRUST Bank.

16. <u>Authorization to Use Cash Collateral</u>. The Debtors shall be authorized to use the Cash Collateral pursuant to the terms and conditions set forth herein during the period commencing on the Petition Date through the date of any hearing on any final order as set forth by the Court (**"Financing Period"**) in such amounts as set forth in the Budget. During the Financing Period, the Debtors' expenditures shall be limited to those expenditures specifically authorized in the Budget.

17. <u>Adequate Protection Payment</u>. The Financing Period shall be extended upon entry of this Final Order for a period of time expiring July 9, 2012, 11:59 p.m. CDT. As adequate protection of INTRUST Bank's interest, a monthly payment representing the monthly interest accruing on INTRUST Bank's Pre-Petition Credit Facility and Pre-Petition Obligations as set forth in the Budget shall be paid no later than the tenth (10th) day of each calendar month

beginning on April 2, 2012, during the Financing Period pursuant to the provisions of Section 363 of the Bankruptcy Code.

18.   Adequate Protection Lien.  INTRUST Bank shall have and is hereby granted as adequate protection for any post-petition diminution in value of its Pre-Petition Collateral (including, without limitation, Cash Collateral), additional and replacement security interests and liens in and upon all of the Pre-Petition Collateral and all of the Debtors' now owned and after acquired assets and rights of any kind or nature and wherever located, including causes of action pursuant to Chapter 5 of the Bankruptcy Code (the "**Adequate Protection Collateral**"), except as to the assets of Ryan 763BK, LLC to which no adequate protection lien shall attach.  The Pre-Petition Collateral and the Adequate Protection Collateral are collectively referred to herein as the "**Collateral.**"  In accordance with Sections 553(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of obligations secured by such Collateral shall constitute adequate protection for the use of that Collateral by the Debtors and the diminution in the value of the Collateral existing on the Petition Date.  The Adequate Protection Liens shall be senior and prior to all other interests or liens whatsoever in or on the Collateral, and shall be subject and junior only to the Carve Out Costs (as defined below) and any duly perfected and unavoidable existing liens that are senior to INTRUST Bank's Pre-Petition Liens (the "**Permitted Liens**").

19.   Perfection of Adequate Protection Liens.  The entry of this final order shall be sufficient and conclusive evidence of the priority, perfection and validity of the Adequate Protection Liens, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien (a "**Perfection Act**").

Notwithstanding the foregoing, if INTRUST Bank, in its sole discretion, elects for any reason to file, record or otherwise effectuate any Perfection Act, INTRUST Bank is authorized to perform such act and the Debtors are authorized and directed to perform such act to the extent necessary or required by INTRUST Bank, which act or acts shall be deemed to have been accomplished as of the date and time of the entry of this Final Order notwithstanding the date and time actually accomplished.  The subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  INTRUST Bank may choose to file, record or present a certified copy of this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file or record such certified copy of this Final Order in accordance with applicable law.  Should INTRUST Bank so choose and attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment or perfection of the Adequate Protection Liens granted herein by virtue of the entry of any interim or final order.

20.    Superpriority Administrative Expense.  To the extent of the Debtors' use of Cash Collateral and any other diminution in value, INTRUST Bank shall have an allowed superpriority administrative expense claim as provided and to the full extent allowed by Sections 503(a), 507(a) and 507(b) of the Bankruptcy Code and otherwise (the "**Superpriority Claim**").  The  Superpriority Claim shall, subject to the Carve Out Costs and the Permitted Liens as and to the extent expressly set forth herein, shall be an allowed claim against the Debtors with priority over any and all administrative expenses and all other claims against the Debtors, now existing or  hereinafter  arising,  of  any  kind  whatsoever,  including,  without  limitation,  all  other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy

70819662v1 0932325

Code, and over any and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. This allowed Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors.

21.    Carve Out Costs.  Upon the occurrence of an Event of Default (as defined below), the liens and security interests of INTRUST Bank in the Collateral and the Superpriority Claim shall be subject only to the right of payment of the following expenses (the "**Carve Out Costs**"):

a.    Fees payable to the Clerk of this Court;

b.    Subject to the terms and conditions of this Final Order, the unpaid and outstanding reasonable fees and expenses incurred on or after the Petition Date and approved by a final order of the Court pursuant to Sections 326, 328, 330 or 331 of the Bankruptcy Code (collectively, the "**Allowed Professional Fees**"), by attorneys, accountants and other professionals retained by the Debtors (collectively, the "**Debtors' Professionals**") in a cumulative, aggregate sum not to exceed the amounts set forth in the attached Budget for the Debtors' bankruptcy counsel and for accountant fees, less the amount of any retainers, if any, then held by such Debtors' Professionals (the "**Debtors' Professionals Fee Carve Out Costs**"); and

c.    In addition, statutory United States Trustee fees shall be part of the allowed Carve Out Costs.

22.    Excluded Professional Fees.  Notwithstanding anything to the contrary herein, neither the Debtors' Professionals Fee Carve Out Costs, nor the proceeds of any Collateral shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Debtors' Professional in connection with any of the following:

a.    An assertion or joinder in (but excluding any investigation into) any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief:

i.    Challenging the legality, validity, priority, perfection or enforceability of the Pre-Petition Obligations or the liens on or security interests in the Collateral with respect thereto;

70819662v1 0932325

13

    ii.    Invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Obligations or the liens on and security interests in the Collateral with respect thereto; or

    iii.    Preventing, hindering or delaying INTRUST Bank's assertion or enforcement of any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions herein (except that proceeds of the Debtors' Professionals Fee Carve Out Costs may be used by the Debtors to pay Allowed Professional Fees of the Debtors' Professionals to make a good faith assertion that no Event of Default is in effect or, subject to the terms herein, to object or respond to any motion or pleading filed by INTRUST Bank);

b.    A request to use the Cash Collateral without the prior written consent of INTRUST Bank in accordance with the terms and conditions herein;

c.    The commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against INTRUST Bank or its officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest under Chapter 5 of the Bankruptcy Code; or

d.    Any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of the INTRUST Bank, or which is contrary, in a manner that is material and adverse to the INTRUST Bank to any term or condition set forth in or acknowledged by the Pre-Petition Credit Facility or this Final Order.

23.    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "**Event of Default**" under this Order:

a.    The Debtors' failure to perform, in any respect, any of the terms, conditions, covenants, or obligations under this Final Order; or

b.    A variation of over five percent (5%) on any line item of the Budget or a cumulative total of five percent (5%) variation on the Budget; or

c.    An "Event of Default" under any of the Pre-Petition Credit Facility documents other than an Event of Default related to:

    i.    Monetary payments thereunder;

    ii.    Financial measures such as net income, debt coverage ratios and the like; and

    iii.    Any other requirement that is inconsistent with an order of this Court or deemed unenforceable under the Bankruptcy Code.  The Debtor

70819662v1 0932325

specifically agrees to maintain the Collateral as required in the Pre-Petition Credit Facility documents, maintain insurance in the amounts and to the extent required in the Pre-Petition Credit Facility documents and pay taxes associated with the Collateral.

24.     <u>Rights and Remedies Upon Event of Default</u>.   Upon an Event of Default, the Debtors' right to use the Cash Collateral on the terms and conditions set forth herein shall terminate automatically, absent further order of this Court.

25.     <u>Expiration of Use of Cash Collateral</u>.   Upon the expiration of the Debtors' authority to use INTRUST Bank's Cash Collateral pursuant to the terms herein, unless an Event of Default set forth herein occurs sooner and the automatic stay has been lifted or modified as set forth below, all of the Debtors' Pre-Petition Obligations or Adequate Protection Obligations shall immediately be due and payable and INTRUST Bank shall automatically and completely be relieved from:

a.     The effect of any stay under Section 362 of the Bankruptcy Code;

b.     Any other restriction on enforcement of its liens upon and security interests in the Collateral; or

c.     Any other rights granted to INTRUST Bank pursuant to the terms and conditions of the Pre-Petition Credit Facility or this Final Order.

Furthermore, upon such expiration INTRUST Bank shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it herein, the Pre-Petition Credit Facility or applicable law, which INTRUST Bank may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtors' estates. The use of Cash Collateral shall extend through July 9, 2012, 11:59 p.m. CDT, unless extended with the written consent of INTRUST Bank.

26.     <u>Relief From Automatic Stay</u>.   The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law

70819662v1 0932325

shall be modified and vacated without further notice, application or order of the Court to the

extent necessary to permit INTRUST Bank to perform any act authorized or permitted under or

by virtue herein, including, without limitation:

    a.    To implement the post-petition financing arrangements authorized by any interim or final order (including the Debtors' execution of documents to renew its obligation to INTRUST Bank); and

    b.    To take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral.  In addition, and without limiting the foregoing, upon the occurrence of an Event of Default and after providing notice to counsel for the Debtors, INTRUST Bank shall be entitled to take any action and exercise all rights and remedies provided to it by any interim or final order, the Pre-Petition Credit Facility or applicable law.

    27.    <u>Debtors' Waivers</u>.  The Debtors irrevocably waive any right that they may have

to:

    a.    Challenge the application of any payments authorized by any interim or final order as pursuant to Section 506(b) of the Bankruptcy Code, or to assert that the value of the Pre-Petition Collateral is less than the Pre-Petition Obligations; or

    b.    Seek relief under the Bankruptcy Code, including, without limitation, under Section 105 of the Bankruptcy Code to the extent any such relief would in any way restrict or impair the rights and remedies of INTRUST Bank as provided herein and the Pre-Petition Credit Facility or INTRUST Bank's exercise of such rights and remedies, including the right to proceed against any non-debtor guarantors of the Pre-Petition Credit Facility; <u>provided</u>, <u>however</u>, that INTRUST Bank may otherwise consent in writing, but no such consent shall be implied from any other action, inaction or acquiescence by INTRUST Bank.

    28.    <u>Limitations of Use of Cash Collateral</u>.  No costs or expenses of administration

which have or may be incurred in these cases at any time during these cases shall be charged

against INTRUST Bank, its claims or the Collateral pursuant to Section 506(c) of the

Bankruptcy Code without the prior written consent of INTRUST Bank, and no such consent

shall be implied from any other action, inaction or acquiescence by INTRUST Bank.

    29.    <u>Release</u>.  In consideration of permitting the use of Cash Collateral and providing

other credit and financial accommodations to the Debtors pursuant to the provisions of the Pre-

70819662v1 0932325

Petition Credit Facility and this Final Order, the Debtors shall forever release, discharge and acquit INTRUST Bank and its participants, agents, officers, directors, employees, attorneys, professionals, assigns, successors and predecessors-in-interest (collectively, the "**Lender Releases**") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, cause of action, indebtedness and obligations of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses that the Debtors had, have or hereafter can or may have against the Lender Releases as of the date of any interim or final order, in respect of events that occurred on or prior to the date hereof with respect to the Debtors, the Pre-Petition Obligations, the Pre-Petition Credit Facility and any other financial accommodations made by INTRUST Bank to the Debtors pursuant to the Pre-Petition Credit Facility.  In addition, upon the repayment of all obligations owed to INTRUST Bank by the Debtors and termination of the rights and obligations arising under the Pre-Petition Credit Facility, any interim or final order, as the case may be (which payment and termination shall be on terms and conditions acceptable to INTRUST Bank) INTRUST Bank shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the Pre-Petition Credit Facility or the applicable order (including, without limitation, any obligation or responsibility whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated, to pay or otherwise fund the Carve Out Costs), on terms and conditions acceptable to INTRUST Bank.

30.     No Modification or Stay.  Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of any interim or final order, the Pre-Petition Credit Facility or any term hereunder or thereunder; (ii) the dismissal or conversion of the cases (each a "**Subject Event**"); (iii) the acts taken by INTRUST Bank in accordance with any interim or final

70819662v1  0932325

order; and (iv) the obligations incurred or arising prior to INTRUST Bank's actual receipt of written notice from the Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of any interim or final order, and the acts taken by INTRUST Bank in accordance with any interim or final order, the liens granted to INTRUST Bank in the Collateral, and all other rights, remedies, privileges and benefits in favor of INTRUST Bank pursuant to any interim or final order and the Pre-Petition Credit Facility shall remain valid and in full force and effect.  For purposes of this Final Order, the term "appeal," as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing or re-evaluating any interim or final order by this Court or any other tribunal.

31.    <u>Power to Waive Rights; Duties to Third Parties</u>.  INTRUST Bank shall have the right to waive, on its own behalf, any of the terms, rights and remedies provided or acknowledged herein and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce such rights and remedies, except as otherwise provided herein.  Any waiver by INTRUST Bank of any rights or remedies shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any rights or remedies shall neither constitute a waiver of such rights or remedies, subject INTRUST Bank to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to INTRUST Bank.

32.    <u>Disposition of Collateral</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of INTRUST Bank (and no such consent shall be implied from any other action, inaction or acquiescence by INTRUST Bank) or an order of this Court, except as contemplated by and in accordance with the

Budget or approved by an order of this Court. Upon any such disposition of the Collateral, the Debtors shall remit to INTRUST Bank, or cause to be remitted to INTRUST Bank, in amounts proportionate with the Debtors' respective obligations to them, all proceeds of the Collateral for application by INTRUST Bank to the respective obligations, in such order and manner as INTRUST Bank may determine in its discretion, in accordance with the terms herein and the Pre-Petition Credit Facility.

33.    <u>Reservation of Rights</u>. The terms, conditions and provisions herein are in addition to and without prejudice to the rights of INTRUST Bank to pursue any and all rights and remedies under the Bankruptcy Code, the Pre-Petition Credit Facility or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of the Cash Collateral or granting of any interest in the Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of the Debtors' Professionals or other parties seeking compensation or reimbursement from the Debtors' estates. To the extent permitted herein, the Debtors further reserve the right to object or respond in opposition to any motion or pleading filed by INTRUST Bank.

34.    <u>Binding Effect</u>. The provisions of this Final Order and the Pre-Petition Credit Facility, the obligations herein, the Superpriority Claim and any and all rights, remedies, privileges and benefits in favor of INTRUST Bank provided or acknowledged herein, and any actions taken pursuant hereto, shall be effective immediately upon entry of any interim or final order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including, without limitation any order which may be

70819662v1 0932325

entered confirming any Plan of Reorganization, converting these cases to any other chapter under the Bankruptcy Code, or dismissing these cases.

Any order dismissing these cases under Section 1112 or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that:

a.  The Superpriority Claim and the liens and security interests of INTRUST Bank in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Debtors' Pre-Petition Obligations and Adequate Protection Obligations are indefeasibly paid and satisfied in full; and

b.  This Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim and liens in the Collateral.

This Final Order shall be binding upon the Debtors, all parties in interest in these cases and their respective successors and assigns, including any trustee of fiduciary appointed in the cases, or any subsequently converted bankruptcy cases of the Debtors. This Final Order shall also inure to the benefit of INTRUST Bank and the Debtors and their respective successors and assigns.

35.  _Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment._  There shall not at any time be entered in these cases, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order which:

a.  Authorized the use of Cash Collateral of the Debtors in which INTRUST Bank has an interest, or the sale, lease or other disposition of property of the Debtors' estates in which INTRUST Bank has a lien or security interest, except as expressly permitted hereunder or in the Pre-Petition Credit Facility; or

b.  Authorized under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which INTRUST Bank holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to INTRUST Bank herein; unless, in each instance:

i.  INTRUST Bank shall have given its express prior written consent with respect thereto; no such consent being implied from any other action, inaction or acquiescence by INTRUST Bank; or

     ii.    Such other order requires that all of the Debtors' obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Credit Facility, including, without limitation, all debts and obligations of the Debtors to INTRUST Bank, which arise or result from the obligations, loans, security interest and liens authorized herein, on terms and conditions acceptable to INTRUST Bank. The security interests and liens granted to or for the benefit of INTRUST Bank hereunder and the rights of INTRUST Bank pursuant to the terms and conditions herein and the Preexisting Credit Facility with respect to the Debtors' Pre-Petition Obligations, Adequate Protection Obligations and the Collateral are cumulative and shall not be altered, modified, extended, impaired or affected by any Plan of Reorganization or liquidation of the Debtors and, unless INTRUST Bank expressly consents in writing that the Debtors' obligations shall not be repaid in full upon confirmation thereof, shall continue after confirmation and consummation of any such Plan.

36.    <u>No Owner/Operator Liability</u>.  In determining to make any loan under any Order entered by this Court, or in exercising any rights or remedies as and when permitted pursuant to the Pre-Petition Credit Facility or any such order, INTRUST Bank shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation and management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601 *et seq.* as amended, or any similar federal or state statute).

37.    <u>Marshaling.</u>  In no event shall INTRUST Bank be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

38.    <u>Term; Termination</u>.  Notwithstanding any provision herein to the contrary, the term of the financing arrangements among the Debtors and INTRUST Bank authorized by this Final Order may be terminated pursuant to the terms herein.

39.    <u>Limited Effect</u>.  Unless the final order specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Pre-Petition Credit Facility

70819662v1 0932325

documents and the final order, the terms and provisions of this Final Order shall govern, interpreted as most consistent with the terms and provisions of the Pre-Petition Credit Facility.

40.    <u>United States Rights of Setoff or Recoupment</u>.  Nothing herein shall impair any rights of setoff or recoupment of the United States, subject to any defenses the Debtors, nor INTRUST Bank may have in respect thereof.

41.    <u>Trust Funds</u>.  The Cash Collateral, DIP Liens and Adequate Protection Liens shall not attach to any trust funds required under federal statute or regulation required of the Debtors in the ordinary course of business specifically including, without limitation, passenger inspection user fees, passenger security fees, or passenger facility charges.

42.    <u>Section 1110 Rights</u>.  Notwithstanding anything contained in this Order to the contrary, the rights of all parties in connection with Section 1110 of the Bankruptcy Code are hereby reserved and shall not be affected or modified by this Order.

43.    <u>Unsecured Creditors Committee</u>.  At the request of the Committee, the court has granted an additional seven (7) day period for the Committee to comment or object to this Final Order.  This Final Order shall be final and binding on all other creditors and parties in interest, except to the limited rights of comment or objection granted the Committee hereunder.  The Final Hearing on any comment or objection of the Official Unsecured Creditors' Committee shall be heard on March 28, 2012.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED the use of Cash Collateral is approved under the terms and conditions set forth herein and Adequate Protection and administrative expense priority is granted as set forth.

IT IS SO ORDERED.
APR 6 2012

Dated: _____

_____
United States Bankruptcy Judge

70819662v1 0932325

22

APPROVED BY:

/s/Thomas J. Lester
Thomas J. Lester
Matthew M. Hevrin
Hinshaw & CULBERTSON LLP
100 Park Avenue
P.O. Box 1389
Rockford, IL  61105-1389
(815) 490-4900
Fax:  (815) 490-4901
*Counsel to the Debtors and Debtors in Possession*


/s/Thomas P. Sandquist
Thomas P. Sandquist
WilliamsMcCarthy, L.L.P.
120 West State Street, Suite 400
P.O. Box 219
Rockford, IL  61105
(815) 987-8929

and

Edward J. Nazar, KS #09845
Redmond & Nazar, L.L.P.
245 North Waco, Suite 402
Wichita, KS  67202-1117
316-262-8361 / 316-263-0610 fax
ednazar@redmondnazar.com
*Counsel for INTRUST Bank, N.A.*

70819662v1 0932325

**EXHIBIT TO FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION AND ADMINISTRATIVE EXPENSE
PRIORITY TO INTRUST BANK, N.A. AND FINAL ORDER OF AUTHORIZATION TO:
(I) OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §364; (II) GRANT
PRIMING LIENS AND SECURITY INTERESTS TO INTRUST BANK, N.A. PURSUANT
TO 11 U.S.C. §364(d)(1) AND 11 U.S.C. §364(c); (III) PROVIDE ADEQUATE
PROTECTION TO INTRUST BANK, N.A. PURSUANT TO 11 U.S.C. §§361, 362,363 AND
364 AND RESOLVING OBJECTIONS OF HARDIN COUNTY SAVINGS BANK**

Notwithstanding any other provision to the Order to which this Exhibit refers or is attached:

1.  INTRUST Bank, N.A. does not pursue a post-petition financing and cash collateral order under 11 U.S.C. §364(d)(1) only as it pertains to the debtor, Sundowner 102, LLC. Rather, in Sundowner 102, LLC, INTRUST Bank, N.A. shall be granted a post-petition lien under the terms and conditions of the Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection and Administrative Expense Priority to INTRUST Bank, N.A. [Docket #90] (the "Cash Collateral Order") and the Final Order Of Post-Petition Financing Pursuant to 11 U.S.C. §364; (II) Grant Priming Liens And Security Interests to INTRUST Bank, N.A. Pursuant to 11 U.S.C. §364(d)(1) (except as to the Sundowner 102, LLC cash collateral) and 11 U.S.C. §364(c); (III) Provide Adequate Protection to INTRUST Bank, N.A. Pursuant to 11 U.S.C. §§361, 362, 363 and 364 [Docket #89] (the "Post-Petition Financing Order") under the provisions of 11 U.S.C. §364(c)(3). This will be without prejudice as to the rights of INTRUST Bank, N.A. to contest the amount and/or the value of the lien of Hardin County Savings Bank on the assets of Sundowner 102, LLC and the value of the cash collateral lien of Hardin County Savings Bank. This Order is without prejudice to the rights of Hardin County Savings Bank to contest the amount/or value of the lien of INTRUST Bank, N.A. on the assets of Sundowner 102, LLC including the cash collateral of Sundowner 102, LLC.

2.  INTRUST Bank, N.A. maintains the right to seek a lien under 11 U.S.C. §364(d)(1) on the assets of all other debtors and the non-filing entities, except as limited in previous hearings.

3.  INTRUST BANK, N.A. acknowledges that the UCC filing of Hardin County Savings Bank precedes the UCC filing of INTRUST Bank, N.A. on the following items:
    All chattel paper, accounts and general intangibles.

4.  This Order does not authorize the Debtor-in-Possession, Sundowner 102, LLC, to use cash collateral of Hardin County Savings Bank, the value or extent of which shall be determined as of the date of the filing of the bankruptcy.

5.  All other terms and conditions of the Cash Collateral Order and Post-Petition Financing Order are incorporated by reference, except as modified herein.

L:\JES\Hardin County Savings Bank\Order Exhibit.txt