# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| RYAN INTERNATIONAL AIRLINES, INC., | ) |
| *et al.*[1], | ) Case No. 12-80802 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

### DEBTORS' APPLICATION FOR AN INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328 AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PLANTE & MORAN PLLC FOR TAX CONSULTING SERVICES NUNC PRO TUNC TO MARCH 6, 2012

Ryan International Airlines, Inc. ("Ryan") and those of its affiliates that are debtors and debtors in possession in these proceedings (collectively, the "Debtors")[1] respectfully represent:

### Relief Requested

By this Application (the "Application"), pursuant to Sections 327(a) and 328 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek entry of an order authorizing the retention of Plante & Moran PLLC ("P&M") for the provision of certain tax consulting services to the Debtors on the terms set forth in the engagement letter dated as of August 27, 2012 between Ryan and P&M (the "Engagement Letter"). A true and accurate copy of the Engagement Letter is attached as Schedule 1 to the Weed Affidavit (defined below). In support of this motion, the Debtors rely on the Affidavit of Timothy G. Weed (the "Weed

---

[1] The Debtors in these Chapter 11 cases (the "Cases"), along with the last four digits of each Debtor's federal taxpayer identification number, include: Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958.

Affidavit") attached hereto as Exhibit A filed contemporaneously herewith.  In further support of this Application, the Debtors respectfully represent as follows:

## Background

1.    On March 6, 2012 (the "Petition Date"), each Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United State Bankruptcy Court for the Northern District of Illinois (the "Court").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    The Debtors are providers of military, passenger and commercial charter air transportation services.  The Debtors are primarily a commercial provider of air transportation for the Department of Defense, the U.S. Marshall's Services and other government agencies.  The Debtors operate their businesses through Ryan with Aircraft leased or owned by the other Debtors.  The Debtors operate a diverse fleet of passenger aircraft, employ approximately 468 employees and have annual revenues of more than $244,000,000.00.

## Jurisdiction

3.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code and Bankruptcy Rule 2014.

## P&M's Qualifications

4.    The Debtors seek to retain P&M because of P&M's extensive experience providing tax consulting services for businesses.  P&M is Chicago-based and is the nation's 11th largest certified public accounting and business advisory firm, providing clients with financial,

70888139v3 0932325

human capital, operations improvement, strategic planning, technology selection and implementation, and family wealth management services. The Debtors believe that P&M is both well qualified and able to assist them in an efficient and timely manner.

5.   P&M previously prepared 2010 federal and state tax returns for certain of the Debtors, and P&M has identified a potential ability to modify the state filings to enable the Debtor to reduce its state tax liabilities. This experience and knowledge will be valuable to the Debtors in their efforts to reduce state tax liabilities for the benefit of the bankruptcy estate. Moreover, P&M filed tax extensions on behalf of the Debtors' (as well as several non-Debtors) for their 2011 federal and state tax filings in March and April 2012. Accordingly, the Debtors wish to retain P&M to provide the services to the Debtors as described below during these Cases.

6.   In addition to providing tax services to the Debtors, P&M has previously provided income tax services (Form 1040) for the two primary shareholders, Ron Swenson and Gerald Weber, and trust tax services (Form 1041) for several Swenson or Weber family trusts. The two primary shareholders also own or control other non-Debtor related entities, most of which are real estate entities (whose assets and activities are unrelated to the military, passenger, and commercial charter air transportation services of the Debtor), for which P&M provided income tax preparation services. In March and April 2012, P&M filed tax return extensions on behalf of certain of these real estate entities and P&M was paid $3,000.00 by these non-Debtor entities. On or about May 8, 2012, P&M verbally informed Ron Swenson and Gerald Weber that it would no longer be providing tax services to the two primary shareholders, the family trusts, and these non-Debtor related real estate entities. On June 14, 2012, P&M resigned in writing from providing any additional services to the two primary shareholders, the family trusts and these

3

70888139v3 0932325

non-Debtor related real estate entities. Additionally, on June 14, 2012, P&M resigned in writing from providing any additional services to twelve non-Debtor airline related entities.

### Services to be Rendered

7.    The tax consulting services that P&M will render are described in greater detail in the Engagement Letter. Subject to the Order, any references to or summaries of the Engagement Letter herein are qualified by the express terms of the Engagement Letter. Pursuant to the Engagement Letter, P&M will, subject to further order of the Court, provide the following services (the "Services") which are necessary to assist the Debtors in executing faithfully their duties as debtors-in-possession:

a.    Conduct an analysis of the state composite income tax ramifications to Rubloff Ryan, LLC ("Phase 1 and 2"). P&M's analysis will include a comprehensive review of the composite requirements of the 5-7 states with the highest apportioned income and a comparison between the tax impact on a composite basis to that when filed by the individual shareholders. At the conclusion of the analysis, P&M will provide the Debtors with an analysis summarizing its recommendations and any other observations regarding the tax ramifications of P&M's recommendations that P&M believes warrants attention. P&M will also make a recommendation as to whether or not to do a complete analysis for the remaining states which Rubloff Ryan files in 2010. The need for this addition work ("Phase 3 and 4") will be based on the results of Phase 1 and 2. P&M and the Debtors will mutually agree on the analysis, and P&M will prepare the 2010 state and local tax returns according to the analysis. (these Services, including Phases 1, 2, 3 and 4, collectively, "Assignment 1 Services").

b.    P&M will prepare tax returns for the year ended December 31, 2011 for Rubloff Ryan, LLC (d/b/a Ryan International, Inc.) and other related Debtor entities as defined in the Engagement Letter (these Services, the "Assignment 2 Services").

8.    The Debtors believe that the employment of P&M is in the best interests of the Debtors and their creditors.

9.    The Services are not duplicative in any manner with the services to be performed by the Debtors' other retained professionals in these chapter 11 cases.

70888139v3 0932325

10.    P&M has agreed not to share with any person the compensation to be paid for services rendered in connection with these Cases.

## Disinterestedness

11.    P&M has undertaken a detailed search to determine, and to disclose, whether it represents or has represented any significant creditors, or insiders of the Debtors. In connection with its proposed retention by the Debtors in these Cases, P&M conducted a search of its client database to determine whether it had any relationships with any of the Debtors, their creditors or any other party in interest in these Cases, or with their respective attorneys and accountants, or the United States Trustee for the Northern District of Illinois (the "U.S. Trustee") or any person employed in the office of the U.S. Trustee. To the extent that this review has indicated that P&M represents or has previously represented any of the foregoing persons or entities in matters unrelated to these Cases, such persons and entities are identified in the Weed Affidavit.

12.    P&M's assistance to such person and entities has been primarily related to various accounting and consulting services.  No services have been provided to these creditors or other parties in interest related to these cases which could impact their rights in the Debtors' Cases, nor does P&M's involvement in these Cases compromise its ability to continue such various consulting services.

13.    Further, as part of its diverse practice, P&M appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties in interest in the Debtors' Cases.  P&M has performed in the past, and may perform in the future, accounting and consulting services for various attorneys and law firms in the legal community, and P&M and its employees have been represented by several attorneys and law firms in the legal community, some of whom are or may become involved in these proceedings.  In addition, P&M has in the

70888139v3 0932325

past, may currently and will likely in the future be working with or against other professionals involved in these Cases in matters unrelated to the Debtors and these Cases. Based upon the Weed Affidavit, none of these business relationships create interests materially adverse to the Debtors herein in matters upon which P&M is to be employed, and none are in connection with these Cases.

14.    P&M is not a "creditor" of the Debtors within the meaning of Section 101(10) of the Bankruptcy Code. To the extent that P&M is a creditor as of the petition date, P&M agrees to waive any prepetition claim it may have.

15.    Based on the results of the relationship search conducted to date as described above, P&M appears to have no connection with the Debtors, their creditors, other parties in interest (as reasonably known to P&M) or their respective attorneys and accountants, except as disclosed in the Weed Affidavit or otherwise described herein. Further, no one involved in these cases or in P&M's practice generally has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

16.    As such, P&M is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that P&M and its employees:

      a.     are not creditors, equity security holders or insiders of the Debtors;

      b.     were not, within two years before the date of filing of the Debtors' Chapter 11 petition, directors, officers, or employees of the Debtors.

17.    In addition, based upon the results of the relationship search described above, P&M neither holds nor represents an interest adverse to the Debtors within the meaning of Section 327(a) of the Bankruptcy Code.

70888139v3 0932325

18.     It is P&M's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new relevant facts or relationships are discovered or arise, P&M will promptly file a Bankruptcy Rule 2014(a) Supplemental Affidavit.

### Professional Fees and Expenses

19.     The Debtors' retention of P&M is evidenced by the Engagement Letter, which provides for the Debtors' engagement of P&M in connection with certain tax and consulting services. A true and correct copy of the Engagement Letter is attached as Schedule 1 to the Weed Affidavit (attached hereto as Exhibit A).

20.     P&M's fees for professional services are based upon its standard hourly rates, which are periodically adjusted.  The Debtors, subject to Court approval in accordance with section 330(a) of the Bankruptcy Code, applicable Bankruptcy Rules, and the orders and Local Rules of this Court, propose to pay P&M its customary hourly rates in effect from time to time as set forth in the Weed Affidavit, plus reimbursement of actual, necessary expenses incurred by P&M in the course of the representation.  The Debtors are advised that the hourly rates set forth below are subject to periodic increases in the normal course of the firm's business, often due to increased experience of a particular professional.  P&M will give prior notice to the Debtors of any such periodic increases.

21.     P&M has advised the Debtors that P&M's estimate of its fee for the Assignment 1 Services is $85,000.00, plus all reasonable and necessary travel and out-of-pocket costs incurred. P&M has advised the Debtors that P&M's estimate of its fee for the Assignment 2 Services is $125,000.00, plus all reasonable and necessary travel and out-of-pocket costs incurred.  Both of these estimates exclude the additional time required for employment and fee applications.

70888139v3 0932325

22.     Prior to the Petition Date, the Debtors paid P&M a $100,000.00 retainer for post-petition tax services; this was the only payment to P&M in the 90 days prior to the March 6, 2012 petition.  The initial services requested of P&M by the Debtor was to file federal and state tax return extensions for the various Debtor (and non-Debtor) entities which were due shortly after the filing of the bankruptcy petition.  P&M filed the requested tax extensions in March and April 2012.

23.     The customary hourly rates, subject to periodic adjustments, charged by the professionals anticipated to be assigned to these Cases are as follows:

| Title | Hourly Rate |
|-------|-------------|
| Partner | $300.00 – 450.00 |
| Manager | $200.00 – 300.00 |
| In-charge | $150.00 – 200.00 |
| Staff | $100.00 – 150.00 |

24.     These are P&M's hourly rates for work of this nature and are subject to periodic adjustments to reflect economic and other conditions, although P&M will provide prior notice to the Debtors prior to any upward adjustments. The Debtors understand that other advisors and staff at P&M may serve the Debtors from time to time at similar rates in connection with these Cases.

25.     Consistent with the firm's policy with respect to its other clients, P&M will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services. These charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials, hearings, and other proceedings which may arise from time to time in these Cases. Charges

8

and disbursements are invoiced pursuant to P&M's terms of engagement and will comply with Local Rule 5082-1. For example, P&M will charge $.10 per page for photocopies.

26.    P&M intends to apply to the Court for allowance of compensation for professional services and reimbursement of expenses incurred in these Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the orders and Local Rules of this Court.

27.    P&M has agreed to accept as compensation such sums as may be allowed by the Court on the basis of the professional time spent, the rates charged for such services, the necessity of such services to the administration of the estates, the reasonableness of the time within which the services were performed in relation to the results achieved, and the complexity, importance, and nature of the problems, issues, or tasks addressed in these cases.

### Notice

28.    The Debtors have provided notice of this motion to: (a) the United States Trustee for Region 11; (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to any statutory committee appointed in these Chapter 11 cases; (d) counsel to INTRUST Bank, N.A., the primary secured lender; (e) Airline Pilots Association, International; (f) Transport Workers Union of America, AFL-CIO; (g) all parties who have requested notice through the ECF Pacer system, and (h) the Internal Revenue Service. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

29.    No prior motion for the relief requested herein has been made by the Debtor to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form attached hereto at Exhibit B authorizing the Debtor's to employ and

retain P&M for tax consulting services effective as of the commencement of these Cases, and

grant the Debtors' such further relief as is just and proper.

Rockford, Illinois

Dated: <u>September 7, 2012</u>                    /s/Thomas J. Lester
                                               Thomas J. Lester
                                               Matthew M. Hevrin
                                               Hinshaw & CULBERTSON LLP
                                             100 Park Avenue
                                             P.O. Box 1389
                                           Rockford, IL  61105-1389
                                           (815) 490-4900
                                           Fax:  (815) 490-4901

                                           *Counsel to the Debtors and Debtors in*
                                           *Possession*

## EXHIBIT A

**AFFIDAVIT OF TIMOTHY G. WEED IN SUPPORT OF DEBTORS' APPLICATION
FOR AN INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328
AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND
RETENTION OF PLANTE & MORAN PLLC FOR TAX CONSULTING SERVICES
NUNC PRO TUNC TO MARCH 6, 2012**

70888139v3  0932325

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| RYAN INTERNATIONAL AIRLINES, INC., | ) |
| *et al.*[2], | ) Case No. 12-80802 |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |

**AFFIDAVIT OF TIMOTHY G. WEED IN SUPPORT OF DEBTORS' APPLICATION FOR AN INTERIM AND FINAL ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 328 AND BANKRUPTCY RULE 2014 AUTHORIZING THE EMPLOYMENT AND RETENTION OF PLANTE & MORAN PLLC FOR TAX CONSULTING SERVICES NUNC PRO TUNC TO MARCH 6, 2012**

I, Timothy G. Weed, being duly sworn, hereby depose and say:

1.      I am a Partner with Plante & Moran PLLC ("P&M"), a certified public accounting and business advisory firm.   I submit this Affidavit (the "Affidavit") on behalf of P&M in support of the Debtors' Application for an Interim and Final Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a) and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Plante & Moran PLLC for Tax Consulting Services Nunc Pro Tunc to March 6, 2012 (the "Application") in the Debtors' Chapter 11 Cases.   Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

---

[2]      The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number, include:  Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958.

[3]      Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at P&M and are based on information provided by them.

70888139v3 0932325

**Disinterestedness and Eligibility**

2.      P&M maintains a computer database containing the names of all of P&M's current clients, many of its former clients, and, where practical, the known affiliates of those clients.  In connection with the preparation of this Affidavit, I instructed P&M professionals and personnel to complete a conflicts review using that database.   In doing so, a search was conducted using the Debtors' current and, if applicable, former names, and the names of (a) Debtors' current officers and directors, (b) Debtors' shareholders, (c) Debtors' secured creditors, (d) Debtors' 50 largest creditors, (e) Debtors' professionals, and (f) equipment lessor to the Debtors, to determine if any of them are or have been clients of P&M.

3.      Based on the results of P&M's review, it was determined that P&M currently represents, and may in the future represent Citizens First National Bank, the City of Detroit, the City of Toledo, the Michigan Department of Treasury, and Verizon Wireless in matters wholly unrelated to these proceedings and are noted for disclosure.  Further, it was also determined that P&M has in the past, and may in the future represent Federal Express, Oklahoma Tax Commission, Safety Kleen Corp, Signature Flight Support, and the Tennessee Department of Revenue.  P&M's assistance to these parties has been related to providing various accounting and tax consulting services. To the best of my knowledge, no services have been provided to these parties in interest which involve their rights in the Debtors' cases, nor does P&M's involvement in these cases compromise its ability to continue such consulting services.

4.      In addition to providing tax services to the Debtors, P&M has previously provided income tax services (Form 1040) for the two primary shareholders, Ron Swenson and Gerald Weber, and trust tax services (Form 1041) for several Swenson or Weber family trusts.  The two primary shareholders also own or control other non-Debtor related entities, most of which are real estate entities (whose assets and activities are unrelated to the military, passenger, and

70888139v3 0932325

commercial charter air transportation services of the Debtor), for which P&M provided income tax preparation services. On or about May 8, 2012, P&M verbally informed Ron Swenson and Gerald Weber that it would no longer be providing tax services to two primary shareholders, the family trusts and these non-Debtor related real estate entities. On June 14, 2012, P&M resigned in writing from providing any additional services to the two primary shareholders, the family trusts and these non-Debtor related real estate entities. Additionally, on June 14, 2012, P&M resigned in writing from providing any additional services to twelve non-Debtor airline related entities.

5.      As part of its diverse practice, P&M appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys, accountants and financial consultants, who may represent claimants and parties in interest in the Debtors' Chapter 11 cases. Also, P&M has performed in the past, and may perform in the future, accounting and consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of whom may be involved in these proceedings. In addition, P&M has in the past, may currently and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to the Debtors and these cases. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtors herein in matters upon which P&M is to be employed, and none are in connection with these cases.

6.      P&M is not a "creditor" of any of the Debtors within the meaning of Section 101(10) of Title 11 of the United States Code (the "Bankruptcy Code"). Further, neither I nor any other P&M employee, to the best of my knowledge, is a holder of any shares of the Debtors' stock.

70888139v3 0932325

7.     Further, to the best of my knowledge, no employee within P&M generally has any connection to the U.S. Trustee or any person employed in the Office of the U.S. Trustee in this District.

8.     As such, to the best of my knowledge, P&M is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, in that P&M and its employees:

    a.     are not creditors, equity security holders or insiders of the Debtors; and

    b.     were not, within two years before the date of filing of the Debtors' Chapter 11 petition, directors, officers, or employees of the Debtors.

9.     In addition, to the best of my knowledge and based upon the results of the relationship search described above and disclosed herein, P&M neither holds nor represents an interest adverse to the Debtors within the meaning of section 327(a) of the Bankruptcy Code.

10.     It is P&M's policy and intent to update and expand its ongoing relationship search for additional parties in interest in an expedient manner. If any new material facts or relationships are discovered or arise, P&M will promptly file a Supplemental Affidavit pursuant to rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Professional Compensation

11.     Subject to Court approval and in accordance with the applicable provisions the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines and the Local Rule 5082-1, P&M will seek payment for compensation on an hourly basis, plus reimbursement of actual and necessary expenses incurred by P&M. P&M's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Application for the employment of P&M. These hourly rates are periodically adjusted. Such rate adjustments will be disclosed to the Debtors.

70888139v3 0932325

12.    The customary hourly rates, subject to periodic adjustments, charged by the professionals anticipated to be assigned to these Cases are as follows:

| Title | Hourly Rate |
|---|---|
| Partner | $300.00 – 450.00 |
| Manager | $200.00 – 300.00 |
| In-charge | $150.00 – 200.00 |
| Staff | $100.00 – 150.00 |

13.    Prior to the Petition Date, the Debtors paid P&M a $100,000.00 retainer for post-petition tax services; this was the only payment to P&M in the 90 days prior to the March 6, 2012 petition.  The initial services requested of P&M by the Debtor was to file federal and state tax return extensions for the various Debtor (and non-Debtor) entities which were due shortly after the filing of the bankruptcy petition.  P&M filed the requested tax extensions in March and April 2012.

14.    To the best of my knowledge, (a) no commitments have been made or received by P&M, nor any employee thereof, with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code, and (b) P&M has no agreement with any other entity to share with such entity any compensation received by P&M in connection with these Chapter 11 cases.

Further, affiant sayeth not.

Dated this 3l ˢᵗ day of August, 2012.

*Timothy Weed*

Timothy G. Weed

16

70888139v3 0932325

## <u>SCHEDULE 1</u>

**ENGAGEMENT LETTER**



Plante & Moran, PLLC
Suite 2700
225 W. Washington St.
Chicago, IL 60606
Tel: 312.899.4460
Fax: 312.726.3262
plantemoran.com

August 27, 2012

Mr. Mark Robinson
Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.)
    and other related Debtor entities (as defined)
4949 Harrison Ave.
Rockford, IL 61108

Dear Mr. Robinson:

RE:    Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.), Debtor in Possession

We continue to be complimented by your selection of our firm to assist you. We are sending this letter and the accompanying Professional Services Agreement, which is hereby incorporated as part of this engagement letter, to confirm our understanding of the nature and limitations of the services we will provide and the terms of our engagement with Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.) ("Rubloff Ryan" or the "Debtor") and other related Debtor entities (as defined below) to provide these services.

**Assignment #1:**

- **Scope of Tax Services:** We have previously prepared 2010 federal and state tax returns for Rubloff Ryan, LLC and other related Debtor entities, but identified a potential ability to modify the state filings to enable the Debtor to reduce its state tax liabilities. To achieve this objective, Plante & Moran, PLLC ("P&M") will conduct an analysis of the state composite income tax ramifications to Rubloff Ryan ("Phases 1 and 2"). Our analysis will include a comprehensive review of the composite requirements of the five to seven states with the highest apportioned income and a comparison between the tax impact on a composite basis to that when filed by the individual shareholders. At the conclusion of our analysis, we will provide you with an analysis summarizing our recommendations and any other observations regarding the tax ramifications of our recommendations that we believe warrant your attention. We will also make a recommendation as to whether or not to do a complete analysis for the remaining states which Rubloff Ryan files in 2010. The need for this additional work ("Phases 3 and 4") will be based on the results of Phases 1 and 2. Lastly, we will mutually agree on the analysis and we will prepare the 2010 state and local tax returns according to the analysis.

- **Timing of Services:** We expect to begin work for this engagement as soon as we are appointed as your tax accountant pursuant to the bankruptcy court proceedings. We anticipate Phases 1 and 2 of this work will take approximately four to six weeks to complete. If Phases 3 and 4 are needed, we will inform you of the timing at that juncture.



Mr. Mark Robinson                                    -2-                                    August 27, 2012
Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.)
 and other related Debtor entities (as defined)

- **Fees and Payment Terms:** Our fee for this engagement will be based on the value of the services
  provided, which is primarily a function of the time that P&M staff expend at our standard hourly
  rates. We estimate that our fee for this engagement, including all four phases described above, will
  be $85,000, plus all reasonable and necessary travel and out-of-pocket costs incurred. P&M will
  submit periodic fee applications to the bankruptcy court. P&M understands its fees and expenses are
  subject to court review and approval.

**Assignment #2:**

- **Scope of Tax Services:** We will prepare the tax returns for the year ended December 31, 2011 for
  Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.) and other related Debtor entities (as
  defined below):

|   | Entity Name | Entity Type | Federal Form | State Return |
|---|---|---|---|---|
| 1 | Rubloff 763BK, LLC | LLC | 1065 | Illinois (Form IL-1065) |
| 2 | Rubloff Aerospace Group LLC | LLC | 1065 | Illinois (Form IL-1065) |
| 3 | Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.) | S-Corp | 1120-S | *Final determination of state and local tax filings is dependent on State and Local Tax Analysis to be completed as "Assignment #1" referenced in this engagement letter* |
| 4 | Sundowner 102, LLC | LLC | 1065 | Arizona (Form 165 and 140 NR Composite); Illinois (Form IL-1065); Louisiana (Form IT 565 and R-6922); Oklahoma (Form 514 and BT-190); Virginia (Form 502 and 765 Composite) |
| 5 | Sundowner Alexandria, LLC | LLC | 1065 | Kansas (Form K-120S and K-150) |
| 6 | Sundowner Mesa, LLC | LLC | 1065 | Georgia (Form 700 and IT-CR) |
| 7 | Sundowner Oklahoma City, LLC | LLC | 1065 | Kansas (Form K-120S and K-150) |
| 8 | Rubloff 757-MSN24794, LLC | LLC | 1065 | Illinois (Form IL-1065) *This entity files as part of the Rubloff Jet Express LLC tax return.* |
| 9 | Rubloff /Ryan 80, LLC | LLC | 1065 | Illinois (Form IL-1065) *This entity files as part of the Rubloff Jet Express LLC tax return.* |
| 10 | Rubloff /Ryan 767, LLC | LLC | 1065 | Illinois (Form IL-1065) *This entity files as part of the Rubloff Jet Express LLC tax return* |



Mr. Mark Robinson                                    -3-                              August 27, 2012
Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.)
 and other related Debtor entities (as defined)

- **Timing of Services:** Because the previously discussed deadlines of July 15, 2012 have not been met, it should be understood that these returns will be delivered subsequent to the Internal Revenue Service filing deadline of September 15, 2012. We will attempt to file the returns as soon as possible after the September 15, 2012 date; however, it should be noted that filing the returns after the due date(s) could subject Rubloff Ryan and other related Debtor entities to penalties and/or interest. Please note the following verbiage extracted from our Addendum to this letter:

  *"As a condition of our engagement, Rubloff Ryan agrees that it is responsible for providing or making available to us in a timely manner the records, schedules, and analyses of information necessary for the preparation of complete and accurate tax returns. We will not audit or verify the information provided; however, we may ask for additional clarification of some of that information. If any information that you provide appears to be incomplete or inaccurate, we will request additional or revised information to be provided to us. This delay may require the rescheduling or suspension of our work. In the event that work is rescheduled or suspended, and subsequently resumed, we offer no guarantee, express or implied, that we will be able to meet any tax filing deadlines or other previously established deadlines related to the completion of our tax return preparation work.*

  *Where we have provided estimates of the timing of our work and completion of tax returns, those estimates are dependent on Rubloff Ryan providing us with all such records, schedules, and analyses on the date our work commences. Because rescheduling or suspending our work imposes additional costs on us, in any circumstance where we have provided estimated fees, those estimated fees may be adjusted for the additional time we incur as a result of rescheduling or suspending our work. These fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement."*

- **Fees and Payment Terms:** Our fee for this engagement will be based on the value of the services provided, which is primarily a function of the time that P&M staff expend at our standard hourly rates. We estimate that our fee for this engagement will be $125,000, plus all reasonable and necessary travel and out-of-pocket costs incurred. Additional time required for employment and fee applications is excluded from this fee estimate. P&M will submit periodic fee applications to the bankruptcy court. P&M understands its fees and expenses are subject to court review and approval.

- In the event our work requires us to perform accounting procedures with respect to the information provided in order to complete the tax returns, our standard billing rates will be charged at the hourly rate ranges outlined below:

  | | |
  |---|---|
  | Partner | $300 - 450 |
  | Manager | $200 - 300 |
  | In-charge | $150 - 200 |
  | Staff | $100 - 150 |

- If you require any additional services, including accounting, consulting, or tax preparation assistance, those services will be detailed in a separate engagement letter.



Mr. Mark Robinson                              -4-                                    August 27, 2012
Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.)
  and other related Debtor entities (as defined)


## RETAINER INFORMATION:

Prior to the filing of the Debtor's bankruptcy petition on March 6, 2012, Rubloff Ryan paid P&M a
$100,000 retainer for post-petition tax services.  In accordance with the rules and procedures of the
bankruptcy court, P&M intends to file for appointment as your tax accountant and to file periodic fee
applications for these and other services described in engagement letters approved by you (or other
qualified officers), and request approval for payment of our fees to the bankruptcy court from the Debtor
and/or applied from this retainer.

If you are in agreement with our understanding of this engagement, as set forth in this engagement letter
and the accompanying Professional Services Agreement, please sign the enclosed copy of this letter and
return it to us with the accompanying Professional Services Agreement.

Thank you for the opportunity to serve you.

Very truly yours,
**Plante & Moran, PLLC**


Kathy M. Downey, Partner                        Sarah E. Shepard, Partner


**Agreed and Accepted**

We accept this engagement letter and the accompanying Professional Services Agreement, which set
forth the entire agreement between Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.) and
other related Debtor entities (as defined) and Plante & Moran, PLLC with respect to the services
specified in the Scope of Tax Services section of this engagement letter.

Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.)
  and other related Debtor entities (as defined)


Mark Robinson                                   Date


Title



**Professional Services Agreement – Tax Consulting Services**
**Addendum to Plante & Moran, PLLC Engagement Letter Dated August 27, 2012**

This Professional Services Agreement is part of the engagement letter for tax consulting services dated August 27, 2012 between Plante & Moran, PLLC (referred to herein as "P&M", "we", "our" or "us") and Rubloff Ryan, LLC (d/b/a Ryan International Airlines, Inc.) and other related Debtor entities (as defined) (referred to herein as "Rubloff Ryan", "you" and "your").

1. **Assignment #1: Management Responsibilities** – The consulting services we will provide are inherently advisory in nature. Management of Rubloff Ryan is solely responsible for any management decisions or management functions in connection with our engagement to provide these services. We will not make any management decisions. Our responsibility is to prepare the tax analysis based on information you provide. We may advise you about possible tax positions or elections, but all final decisions about such matters are your responsibility. Rubloff Ryan recognizes and acknowledges that it has the final responsibility for its tax returns and the tax positions taken therein. Further, you acknowledge that Rubloff Ryan is responsible for evaluating the adequacy of the services we will provide and accepting responsibility for the results of those services; and for establishing and maintaining internal controls, including monitoring ongoing activities, in connection with our engagement. You have designated Mark Robinson and Amy Harris to oversee the services we will provide.

2. **Assignment #1: Limitations of Services** – Our analysis will be based on information and records provided to us by Rubloff Ryan. We will rely on such underlying information and records and our analysis will not include audit or verification of the information and records provided to us in connection with our analysis. If any information that you provide appears to be incomplete or unsatisfactory, we will request additional or revised information to be provided to us on a timely basis. If we are unable to obtain the necessary additional or revised information, we may cease work or withdraw from this engagement.

   Our analysis will be limited solely to state income tax matters related to the transactions outlined within the engagement letter ("Subject Transactions"). Our analysis will not include any investment advice or recommendations. As a result, our analysis will not represent and should not be construed to represent advice or recommendations regarding the advisability of the Subject Transactions for investment or any other purposes.

   The analysis we will perform will not constitute an examination or audit of any Rubloff Ryan financial statements or any other items, including Rubloff Ryan's internal controls. This engagement also will not include preparation or review of any tax returns. If you require financial statements or other financial information for third-party use, or if you require tax preparation services, a separate engagement letter will be required. Accordingly, you agree not to associate or make reference to P&M in connection with any financial statements or other financial information of Rubloff Ryan as a result of this engagement. In addition, our engagement is not designed and cannot be relied upon to disclose errors, fraud or illegal acts that may exist. However, we will inform you of any such matters that come to our attention.

3. **Assignment #1: Use of Summary of Conclusions** – At the conclusion of our analysis, we will provide you with a summary of our conclusions regarding the tax ramifications of the transaction(s) outlined in the engagement letter. We will also provide you with copies of analyses or other materials that we develop in the course of this engagement at your request. Our summary will be restricted solely to use by management of Rubloff Ryan and you agree that our summary will not be distributed to any outside parties for any purpose other than to carry out legal responsibilities of Rubloff Ryan. We will have no responsibility to update our summary for any events or circumstances that occur or become known subsequent to the date of that summary.

4. **Assignment #2: Tax Return Preparation** – The tax returns of Rubloff Ryan being prepared by Plante & Moran, PLLC (referred to herein as "P&M," "we," "our," or "us") are the responsibility of Rubloff Ryan. Our responsibility is to prepare the returns from information you provide. We will not prepare any tax returns or filings other than those listed in the accompanying engagement letter. For example, unless identified in the engagement letter, we will not prepare quarterly estimated payments or tax returns that Rubloff Ryan may be required to file with states, municipalities, or taxing authorities. If you require additional tax services, including tax consulting or preparation of additional tax returns, those services will be detailed in a separate engagement letter. You agree that the nature and extent of the tax return preparation services that we will provide, as outlined in this paragraph, are sufficient for your purposes.

   Rubloff Ryan is solely responsible for all management decisions and management functions required for the preparation of its tax returns. We will not make any management decisions. Our responsibility is to prepare the tax returns based on information you provide. We may advise you about possible tax positions or elections, but all final decisions about such matters are your responsibility. You have designated Mark Robinson and/or Amy Harris to oversee the tax preparation services we will provide. Rubloff Ryan recognizes and acknowledges that it has the final responsibility for its tax returns, and accordingly, Rubloff Ryan agrees it will review them carefully before filing to determine that the returns are, to the best of your knowledge and belief, true, correct and complete.

*Professional Services Agreement – Tax Services*

Tax laws require that uncertain tax positions be disclosed unless there is substantial authority for such positions. We will include disclosures that, in our professional judgment, are required by the tax laws when preparing your tax returns.

Our tax preparation services will not constitute a compilation, review, or audit of Rubloff Ryan's financial statements or other financial information. Accordingly, you represent and agree that you will not make reference to Plante & Moran, PLLC in connection with any offering document or in any communication with any third party regarding financial statements or other financial information of Rubloff Ryan. If you require financial statements or other financial information for third party use, those services will be detailed in a separate engagement letter.

Rubloff Ryan also recognizes and acknowledges that these tax return preparation services do not include any assessment or evaluation of internal controls, which are the responsibility of management, and cannot be relied upon to detect or disclose any fraud, defalcation, or other irregularities that may exist.

5. **Assignment #2: Tax Return Information** – As a condition of our engagement, Rubloff Ryan agrees that it is responsible for providing or making available to us in a timely manner the records, schedules, and analyses of information necessary for the preparation of complete and accurate tax returns. We will not audit or verify the information provided; however, we may ask for additional clarification of some of that information. If any information that you provide appears to be incomplete or inaccurate, we will request additional or revised information to be provided to us. This delay may require the rescheduling or suspension of our work. In the event that work is rescheduled or suspended, and subsequently resumed, we offer no guarantee, express or implied, that we will be able to meet any tax filing deadlines or other previously established deadlines related to the completion of our tax return preparation work.

Where we have provided estimates of the timing of our work and completion of tax returns, those estimates are dependent on Rubloff Ryan providing us with all such records, schedules, and analyses on the date our work commences. Because rescheduling or suspending our work imposes additional costs on us, in any circumstance where we have provided estimated fees, those estimated fees may be adjusted for the additional time we incur as a result of rescheduling or suspending our work. These fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement.

6. **Tax Records** – Rubloff Ryan's management is responsible for establishing and maintaining appropriate documentation and substantiation of deductions and tax positions in accordance with the requirements of applicable taxing authorities. You acknowledge and agree that taxing authorities may impose additional tax, interest, or penalties if Rubloff Ryan fails to establish and maintain required documentation and that we assume no responsibility for any such assessments or penalties.

For example, and not by way of limitation, Rubloff Ryan's management is responsible for substantiating documentation required by:

- Internal Revenue Code Sections 274 and 170 regarding deductions for travel and entertainment and charitable contributions
- Internal Revenue Code Sections 482, 6662, 994, and similar sections regarding determination of intercompany and related-party transfer prices whether applicable to foreign or domestic matters
- Internal Revenue Code Section 199 regarding the domestic producer's deduction
- Internal Revenue Code Sections 41 and 174 regarding determination of qualified research expenditures for research credits
- Internal Revenue Code Section 263A regarding determination of certain adjustments to inventory
- Internal Revenue Code and U.S. Treasury regulations regarding determination of classification and lives for acquired real and personal property

You should retain all documents and other data that form the basis of income and deductions, including documents and data that support conclusions from our analysis during this engagement. This documentation may be necessary to prove the accuracy and completeness of your tax returns in the event that they are selected for an examination by a taxing authority.

Tax laws require that uncertain tax positions be disclosed unless there is substantial authority for such positions. We will identify whether our summary of conclusions includes uncertain tax positions that we believe should include disclosures that, in our professional judgment, are required by the tax laws when preparing your tax returns.

7. **Taxing Authority Audits** – Rubloff Ryan's tax returns and filings may be subject to audit by applicable taxing authorities. We provide no guarantee, express or implied, of the outcome of any audit or any other determination by a taxing authority with respect to the tax matters related to transactions outlined within the accompanying engagement letter. In the event that tax returns and filings that include the tax matters related to transactions outlined within the accompanying engagement letter are selected for examination by a taxing authority, we are available to present all or part of our analysis to the applicable taxing authority on your behalf at an additional charge. Our fee for the tax consulting and preparation services

*Professional Services Agreement – Tax Services*

covered by this agreement does not include representation in any examination or responding to other inquiries by taxing authorities.

8.  **Tax Advice** – The Internal Revenue Service has issued regulations that require written advice regarding tax matters to meet very detailed and comprehensive requirements before it can be relied upon by a taxpayer to avoid penalties that might apply if the tax benefits or results discussed in the document are disallowed. Written advice issued in compliance with these standards is referred to as a "Covered Opinion." Compliance with these rigorous standards and requirements exceeds the scope of this engagement. Accordingly, without regard to whether a written report is issued in connection with this engagement, we will not issue a Covered Opinion in connection with this engagement. If during the course of this engagement you determine that you would like us to provide a Covered Opinion, a written acknowledgement of the change in the scope of the engagement will be required. It is understood that a Covered Opinion is issued only with respect to the taxpayer seeking the opinion and may not be relied upon by other parties.

9.  **Confidentiality, Ownership and Retention of Workpapers** – During the course of this engagement, P&M and P&M staff may have access to proprietary information of Rubloff Ryan, including, but not limited to, information regarding trade secrets, business methods, plans, or projects. We acknowledge that such information, regardless of its form, is confidential and proprietary to Rubloff Ryan, and we will not use such information for any purpose other than our consulting engagement or disclose such information to any other person or entity without the prior written consent of Rubloff Ryan.

In some circumstances, we may use local or international third-party service providers or P&M affiliates to assist us with our engagement. In order to enable these service providers to assist us in this capacity, we must disclose information to these service providers that is relevant to the services they provide. Disclosure of such information shall not constitute a breach of the provisions of this agreement.

In the interest of facilitating our services to you, we may communicate or exchange data by internet, e-mail, facsimile transmission, or other methods. While we use our best efforts to keep such communications and transmissions secure in accordance with our obligations under applicable laws and professional standards, you recognize and accept that we have no control over the unauthorized interception of these communications or transmissions once they have been sent, and you consent to our use of these electronic devices during this engagement.

Professional standards require that we create and retain certain workpapers for engagements of this nature. All workpapers created in the course of this engagement are and shall remain the property of P&M. We will maintain the confidentiality of all such workpapers as long as they remain in our possession.

Both Rubloff Ryan and P&M acknowledge, however, that we may be required to make our workpapers available to regulatory authorities or by court order or subpoena. Disclosure of confidential information in accordance with requirements of regulatory authorities or pursuant to court order or subpoena shall not constitute a breach of the provisions of this agreement. In the event that a request for any confidential information or workpapers covered by this agreement is made by regulatory authorities or pursuant to a court order or subpoena, we agree to inform Rubloff Ryan in a timely manner of such request and to cooperate with Rubloff Ryan should you attempt, at your cost, to limit such access. This provision will survive the termination of this agreement.

We reserve the right to destroy, and it is understood that we will destroy, workpapers created in the course of this engagement in accordance with our record retention and destruction policies, which are designed to meet all relevant regulatory requirements for retention of workpapers. P&M has no obligation to maintain workpapers other than for its own purposes or to meet those regulatory requirements.

Upon Rubloff Ryan's written request, we may, at our sole discretion, allow others to view any workpapers remaining in our possession if there is a specific business purpose for such a review. We will evaluate each written request independently. You acknowledge and agree that we will have no obligation to provide such access or to provide copies of our workpapers, without regard to whether access had been granted with respect to any prior requests.

10. **Fee Estimates** – Any fee estimates provided were based on and depend on Rubloff Ryan personnel providing P&M staff the assistance necessary to satisfy Rubloff Ryan responsibilities under the scope of services. This assistance includes availability and cooperation of those Rubloff Ryan personnel relevant to our project activities and providing needed information to us in a timely and orderly manner. In the event that undisclosed or unforeseeable facts regarding these matters causes the actual work required for this engagement to vary from our estimates, our estimated fees will be adjusted for the additional time we incur as a result.

*Professional Services Agreement – Tax Services*

In any circumstance where our work is rescheduled, we offer no guarantee, express or implied, that we will be able to meet any previously established deadline related to the completion of our work. Because rescheduling our work imposes additional costs on us, in any circumstance where we have provided estimated fees, those estimated fees may be adjusted for additional time we incur as a result of rescheduling our work.

Any fee adjustments will be determined in accordance with the Fee Adjustments provision of this agreement.

11. **Payment Terms** – Our invoices for professional services are due upon receipt unless otherwise specified in our engagement letter. In the event any of our invoices are not paid in accordance with the terms of this agreement, we may elect, at our sole discretion, to suspend work until we receive payment in full for all amounts due or terminate this engagement. In the event that work is suspended, for nonpayment or other reasons, and subsequently resumed, we offer no guarantee, express or implied, that we will be able to meet any previously established deadlines related to the completion of our consulting work or issuance of our consulting report upon resumption of our work.

12. **Fee Adjustments** – Any fee adjustments for reasons described in this agreement will be determined based on the actual time that P&M staff expend at our hourly rates, plus all reasonable and necessary travel and out-of-pocket costs incurred, and included as an adjustment to our invoices related to this engagement. You acknowledge and agree that payment for all such fee adjustments will be made in accordance with the payment terms provided in this agreement.

13. **Termination of Engagement** – This agreement may be terminated by either party upon written notice. Upon notification of termination, our services will cease and our engagement will be deemed to be complete. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination of this engagement.

14. **Limitation on Liability** – In recognition of the relative risks and benefits of this engagement to both Rubloff Ryan and Plante & Moran, PLLC, both parties have discussed and have agreed on the fair allocation of risk between them. As such, Rubloff Ryan agrees, to the fullest extent permitted by law, to limit the liability of Plante & Moran, PLLC, to Rubloff Ryan for any and all claims, losses, costs, and damages of any nature whatsoever so that the total aggregate liability of P&M to Rubloff Ryan shall not exceed two (2) times the total fee paid to P&M for the services provided in connection with this engagement. Rubloff Ryan and P&M intend and agree that this limitation applies to any and all liability or cause of action against P&M, however alleged or arising, unless otherwise prohibited by law.

15. **Mediation Before Arbitration** – If any dispute arises among the parties hereto, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Rules for Professional Accounting and Related Service Disputes. If the parties are unable to resolve the dispute through mediation within 90 days from the date notice is first given from one party to the other as to the existence of a dispute and the demand to mediate, then they may proceed to resolve the matter by arbitration. Costs of any mediation shall be shared equally by all parties.

16. **Arbitration Clause** – Rubloff Ryan and Plante & Moran, PLLC, both agree that any dispute in connection with this engagement will be submitted for resolution by arbitration in accordance with the Rules for Professional Accounting and Related Services Disputes of the American Arbitration Association. Such arbitration shall be binding and final. IN AGREEING TO ARBITRATION, WE BOTH ACKNOWLEDGE THAT, IN THE EVENT OF A DISPUTE, EACH OF US IS GIVING UP THE RIGHT TO HAVE THE DISPUTE DECIDED IN A COURT OF LAW BEFORE A JUDGE AND JURY AND INSTEAD ARE ACCEPTING THE USE OF ARBITRATION FOR RESOLUTION.

17. **Conflicts of Interest** – Our engagement acceptance procedures include a check as to whether any conflicts of interest exists that would prevent our acceptance of this engagement. No such conflicts have been identified. You understand and acknowledge that P&M may be engaged to provide professional services, now or in the future, unrelated to this engagement to parties whose interests may not be consistent with yours.

18. **Governing Law** – This agreement shall be governed by and construed in accordance with the laws of the state of Illinois.

**End of Professional Services Agreement – Tax Services**

## EXHIBIT B

**PROPOSED ORDER**

18

70888139v3  0932325

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| _____ ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 12- 80802 |
| RYAN INTERNATIONAL AIRLINES, INC., ) | |
| *et al.*[4], ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| _____ ) | |

## ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF
## PLANTE & MORAN PLLC NUNC PRO TUNC TO MARCH 6, 2012

Upon the application (the "Application") of Ryan International Airlines and its affiliates

that are debtors and debtors in possession in these proceedings (collectively, the "Debtors"),

pursuant to sections 105, 327, 328 and 1107 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), for authorization to employ and retain Plante & Moran PLLC ("P&M") for

the provision of tax consulting services, pursuant to the terms set forth in the Application; and

upon the Affidavit of Timothy G. Weed, filed in support of the Application, annexed to the

Application as Exhibit B (the "Weed Affidavit"); and the Court being satisfied, based on the

representations made in the Application and the Weed Affidavit, that the retention of P&M is

proper under sections 327 and 328 of the Bankruptcy Code; and the Court having jurisdiction to

consider the Application and the relief requested therein pursuant to 28 U.S.C. § 1334; and

consideration of the Application and the requested relief being a core proceeding the Bankruptcy

---

[4] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer
identification number include:  Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494;
Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777;
Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC f/k/a Prisoner
Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

70888139v3 0932325

Court can determine pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having

been served by the Debtors, and it appearing that no other or further notice need be provided; and

the relief requested in the Application being in the best interests of the Debtors and their estates

and creditors; and the Court having reviewed the Application and having held a hearing with

appearances of parties in interest noted in the transcript thereof (the "Hearing"); and the Court

having determined that the legal and factual bases set forth in the Application and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Debtors are hereby authorized to employ and retain Plante & Moran

to provide tax consulting services nunc pro tunc to March 6, 2012, as contemplated by the

Application and on the terms provided in the Application, the Weed Affidavit, the Engagement

Letter and this Order; and it is further

ORDERED that P&M shall use its reasonable efforts to avoid any duplication of services

provided by any of the Debtors' other retained professionals in these chapter 11 cases; and it is

further

ORDERED that to the extent that there may be any inconsistency between the terms of

the Application, the Weed Affidavit or the Engagement Letter and this Order, the terms of this

Order shall govern, and it is further

Dated: _____, 2012
Rockford, Illinois

_____
HONORABLE MANUEL BARBOSA
UNITED STATES BANKRUPTCY JUDGE

20

70888139v3 0932325