## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| ...................................................................... | ) | Chapter 11 |
| In re: | ) | Case No. 12-80802 |
| | ) | Jointly Administered |
| RYAN INTERNATIONAL AIRLINES, INC., | ) | Honorable Thomas M. Lynch |
| *et al.*[1], | ) | |
| | ) | Hearing: October 19, 2015 |
| Debtors. | ) | 11:00 a.m. (CT) |
| ……………………………………………………. | | |

## NOTICE OF THIRD INTERIM AND FINAL FEE APPLICATION OF SIDLEY AUSTIN LLP AS COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

To:     See Attached Service List

PLEASE TAKE NOTICE that on September 18, 2015, Sidley Austin LLP ("Sidley"), as counsel to the official committee of unsecured creditors (the "Committee") of Ryan International Airlines, Inc. and its affiliated debtors (collectively, the "Debtors") filed its *Final Fee Application of Sidley Austin LLP as Counsel to the Official Committee of Unsecured Creditors* (the "Final Fee Application") with the United States Bankruptcy Court for the Northern District of Illinois.  By the Final Fee Application, Sidley seeks entry of an order: (a) for allowance and approval of $99,674.95 (as appropriately reduced from $112,690.20 in services billed) for compensation for professionals services rendered by Sidley to the Committee for the period of September 1, 2012 through February 28, 2013 (the "Final Fee Application Period"), and reimbursement of $2,037.70 for actual and necessary expenses incurred by Sidley during the

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number include: Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC *f/k/a* Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

Final Fee Application Period; and (b) authorizing the Trustee to pay Sidley for its fees and expenses incurred prior to the Conversion Date[2] pursuant to the Settlement Order.

PLEASE TAKE FURTHER NOTICE THAT a hearing on the Final Fee Application will take place before the Honorable Thomas M. Lynch of the United States Bankruptcy Court for the Northern District of Illinois, Western Division, or whomever may be sitting in his place and stead, at 327 South Church Street, Courtroom 3100, Rockford, Illinois on October 19, 2015, at 11:00 a.m.

Objections, if any, to the relief requested in the Final Fee Application must be filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Western Division, 327 South Church Street, Rockford, Illinois prior to the hearing on the Final Fee Application.

At the same time, you should also serve a copy of the objection upon the following so as to be received prior to the hearing on the Final Fee Application: Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Michael T. Gustafson).

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE FINAL FEE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

---

[2] All capitalized terms used herein but not defined shall carry the definitions provided for in Final Fee Application.

Dated: Rockford, Illinois                    Respectfully submitted,
      September 18, 2015

                                      SIDLEY AUSTIN LLP

                                      By:     /s/ Matthew A. Clemente       
                                        Matthew A. Clemente
                                        Michael G. Burke (admitted *pro hac vice*)
                                        Brian J. Lohan
                                        Matthew G. Martinez
                                        Michael T. Gustafson
                                        One South Dearborn Street
                                        Chicago, IL  60603
                                        Telephone:  (312) 853-7000
                                        Facsimile:  (312) 853-7036

                                      ATTORNEYS FOR OFFICIAL COMMITTEE OF
                                      UNSECURED CREDITORS

### CERTIFICATE OF SERVICE

I, Brian J. Lohan, an attorney, certify that a true and correct copy of the *Notice of Application* and the *Final Fee Application of Sidley Austin LLP as Counsel to the Official Committee of Unsecured Creditors* was filed with the Clerk of the U.S. Bankruptcy Court, Northern District of Illinois, using the CM/ECF filing system, which caused a copy to be electronically mailed to all CM/ECF participants registered to receive electronic notices in the above captioned case; and served via electronic mail to the following parties on the attached Service List on this 18th day of September, 2015.

Dated:  September 18, 2015                    By:     /s/ Brian J. Lohan

## SERVICE LIST

| **SERVED VIA THE U.S. DISTRICT COURT CM/ECF E-FILING SYSTEM** | |
|---|---|
| Raul Abad on behalf of Creditor Phoenix-Mesa Gateway Airport Authority rabad@gustlaw.com, rstein@gustlaw.com;mwanslee@gustlaw.com | Matthew A Clemente on behalf of the Unsecured Creditors Committee mclemente@sidley.com, efilingnotice@sidley.com;lslaby@sidley.com;mgustafson@sidley.com;mgburke@sidley.com;blohan@sidley.com; mmartinez@sidley.com |
| Russell Baker on behalf of Creditor Hardin County Savings Bank rbaker@bslbv.com, sjohnson@bslbv.com | Debra Devassy Babu on behalf of Creditor Flatiron Capital, A division of Wells Fargo Bank ddevassy@askounisdarcy.com |
| Jamie S Franklin jsf@thefranklinlawfirm.com | William S Hackney whackney@salawus.com, jadams@salawus.com |
| J. Douglas Bacon on behalf of Creditor AFT Trust Sub I chefiling@lw.com | Steven A. Ginther on behalf of Creditor Missouri Department of Revenue ndilecf@dor.mo.gov |
| Robert J. Labate on behalf of Creditor Aircastle Advisor, LLC robert.labate@hklaw.com | Robert Simons on behalf of Creditor PNC Equipment Finance, LLC rsimons@reedsmith.com slucas@reedsmith.com jroach@reedsmith.com |
| Stephen G Balsley on behalf of Creditor Hardin County Savings Bank sbalsley@bslbv.com | Jeremy Schreiber jschreib@chapman.com |
| Richard A Bixter on behalf of Creditor Wells Fargo Bank Northwest, N.A. (as Owner Trustee) richard.bixter@hklaw.com | James E Stevens on behalf of Creditor Hardin County Savings Bank jimstevens@bslbv.com |
| Thomas J Lester on behalf of Debtor Rubloff 757-MSN24794, LLC tlester@hinshawlaw.com | Andrea Handel on behalf of Creditor United States andrea.handel@usdoj.gov |
| Stephen T. Bobo on behalf of Creditor PNC Equipment Finance, LLC sbobo@reedsmith.com | Jack D. Ward on behalf of Creditor Delta Air Lines jdw@renozahm.com |

2

| | |
|---|---|
| Douglas J. Lipke on behalf of Creditor Barrington Bank & Trust Company, N.A. dlipke@vedderprice.com ecfdocket@vedderprice.com | Matthew M. Hevrin on behalf of Debtor Rubloff 757-MSN24794, LLC mhevrin@hinshawlaw.com jfornal@hinshawlaw.com |
| Scott E Hillison mmagnuson@bjnatalelaw.com | John Ireland atty4employees@aol.com |
| Tiffany Rodriguez trodriguez@bslbv.com | Craig A Willette on behalf of Creditor Air Line Pilots Association, International craigwillette@comcast.net |
| Thomas P. Sandquist on behalf of Creditor INTRUST Bank, N.A. tsandquist@wilmac.com | Patrick S Layng United States Trustee USTPRegion11.MD.ECF@usdoj.gov |
| Carole J. Ryczek carole.ryczek@usdoj.gov | Thomas Springer tspringer@springerbrown.com |
| Steven R Rappin dolswang@hrolaw.com, rarredondo@hrolaw.com | |

3

| **SERVED VIA U.S. MAIL, PROPER POSTAGE PREPAID** | |
|---|---|
| **Neal M Davis**<br>Airline Pilots Association<br>230 South Bemiston Ave, Suite 1200<br>St Louis, MO 63105 | **Judith Elkin**<br>Haynes and Boone LLP<br>30 Rockefeller Plaza<br>New York, NY 10112 |
| **Joshua J Ellison**<br>Cohen Weiss and Simon LLP<br>330 West 42nd Street 25th Floor<br>New York, NY 10036 | **Adam J Goldberg**<br>885 Third Avenue<br>NewYork, NY 10022 |
| **Jonathan Hook**<br>Haynes and Boone LLP<br>30 Rockefeller Plaza<br>New York, NY 10112 | **Robert J Manne**<br>2000 Ultimate Way<br>Weston, FL 33326 |
| **William McCormick**<br>Attorney General Bankruptcy Division<br>Tennessee Department of Revenue<br>PO Box 20207<br>Nashville, TN 37202 | **Anita Mosner**<br>Holland & Knight<br>2099 Pennsylvania Avenue NW<br>Washington, DC 20006 |
| **Edward J Nazar**<br>Redmond & Nazar LLC<br>245 N Waco, Suite 402<br>Wichita, KS 67202 | **Steven A. Nerger**<br>Silverman Consulting<br>5750 Old Orchard Road<br>Skokie, IL 60077 |
| **Joseph Kots**<br>Commonwealth of Pennsylvania Department of Labor and Industry<br>Reading Bankruptcy & Compliance Unit<br>625 Cherry St<br>Room 203<br>Reading, PA 19602-1152 | **Timothy G. Weed**<br>Plante & Moran PLLC<br>225 West Washington Street<br>Chicago, IL 60606 |
| **Judith Elkin** on behalf of Raymond James & Associates, Inc.<br>Haynes and Boone, LLC<br>30 Rockefeller Plaza<br>26th Floor<br>New York, NY 10112 | **Kenneth A Reynolds**<br>McBreen & Kopko<br>500 North Broadway<br>Jericho, NY 11753 |

| | |
|---|---|
| **Jared S Roach**<br>Reed Smith LLP<br>Reed Smith Centre<br>225 Fifth Avenue<br>Pittsburgh, PA 15222 | **James H Rollins**<br>Holland & Knight LLP<br>1201 West Peachtree Street NE<br>Suite 2000<br>Atlanta, GA 30309 |
| **Arthur E Rosenberg**<br>Holland & Knight LLP<br>31 West 52nd Street 11th Floor<br>New York, NY 10019 | **Richard M Seltzer**<br>Cohen Weiss and Simon LLP<br>330 West 42nd Street<br>New York, NY 10036 |
| **Steven E Seward**<br>1 E Broward Blvd #1010<br>Ft Lauderdale, FL 33301 | **Stephen C Stapleton**<br>Cowles & Thompson PC<br>901 Main Street, Suite 3900<br>Dallas, TX 75202 |
| **Texas Comptroller of Public Accounts**<br>Jason Starks<br>c/o Sherri K. Simpson, Paralegal<br>P.O. Box 12548<br>Austin, TX 78711-2548 | **The Port Authority of New York and New Jersey**<br>225 Park Avenue South<br>13th Floor<br>New York, NY 10003 |
| **John M Toriello**<br>Holland & Knight LLP<br>31 West 52nd Street<br>New York, NY 10019 | **Mark D Walz**<br>Davis Brown Law Firm<br>4201 Westown Parkway, Suite 300<br>West Des Moines, IA 50266 |
| **Michael D Warner**<br>Cole Schotz Meisel Forman & Leonard PA<br>301 Commerce Street Suite 1700<br>Fort Worth, TX 76102 | **Harris B Winsberg**<br>King & Spalding LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309 |

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

...............................................................
|   |   |
|---|---|
| | ) Chapter 11 |
| In re: | ) Case No. 12-80802 |
| | ) Jointly Administered |
| RYAN INTERNATIONAL AIRLINES, INC., | ) Honorable Thomas M. Lynch |
| *et al.*[1], | ) |
| | ) Hearing: October 19, 2015 |
| Debtors. | ) 11:00 a.m. (CT) |

……………………………………………….)

**THIRD AND FINAL FEE APPLICATION OF SIDLEY AUSTIN LLP AS COUNSEL
TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Sidley Austin LLP ("Sidley"), counsel to the Official Committee of Unsecured Creditors

(the "Committee") appointed in the above-captioned jointly-administered chapter 11 cases,

hereby submits the *Final Fee Application of Sidley Austin LLP as Counsel to Official Committee*

*of Unsecured Creditors* (the "Final Fee Application"), relating to services rendered and expenses

incurred from September 1, 2012 through February 28, 2013, and in support thereof, states:

**JURISDICTION AND VENUE**

1.　　　The Court has jurisdiction over this matter pursuant to sections 1334 and

157(a) of title 28 of the United States Code and Internal Operating Procedure 15(a) of the United

States District Court for the Northern District of Illinois.  This is a core proceeding pursuant to

section 157(b)(2) of title 28 of the United States Code.  Venue is proper in this district pursuant

to sections 1408 and 1409 of title 28 of the United States Code.

2.　　　The statutory predicates for the relief requested herein are sections 330,

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer identification number include: Ryan International Airlines, Inc., 1437; Rubloff 757-MSN24794, LLC, 1494; Rubloff Ryan, L.L.C., 1289; Rubloff/Ryan 80 LLC, 4274; Ryan 763BK, L.L.C., 4107; Ryan 767, LLC, 6777; Sundowner 102, LLC, 6462; Sundowner Alexandria LLC, 1058; Sundowner Mesa, LLC *f/k/a* Prisoner Transportation Services, LLC, 7195; Sundowner Oklahoma City LLC, 0958; Rubloff Aerospace, L.L.C., 4536.

503(b), and 507(a)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 5082-1 of the

Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the

"Local Rules").

## BACKGROUND

A.    **The Chapter 11 Case**

3.     On March 6, 2012, Ryan International Airlines, Inc. and its affiliated

debtors (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (the

"Court").

4.     On March 7, 2012, the Court approved the joint administration of the

chapter 11 cases (Docket No. 33).

5.     On March 19, 2012, the United States Trustee (the "U.S. Trustee")

appointed the Committee as an official committee to represent the interests of unsecured

creditors of the Debtors pursuant to section 1102 of the Bankruptcy Code.  On the afternoon of

March 22, 2012, the Committee selected Sidley as its counsel.

6.     On April 12, 2012, the Committee filed its *Motion to Authorize the

Official Committee Of Unsecured Creditors to Retain and Employ Sidley Austin LLP As Counsel

Nunc Pro Tunc to the Retention Date* (the "Retention Application") (Docket No. 141).  On April

18, 2012, the Court entered an order authorizing the retention of Sidley as counsel to the

Committee, effective as of March 22, 2012 ("Retention Order") (Docket No. 164).

7.     On July 25, 2012, Sidley submitted its *First Interim Fee Application as

Counsel to the Official Committee of Unsecured Creditors* (the "First Interim Fee Application")

(Docket No. 457) requesting $117,405.95 in fees and $2,477.75 in expenses for the period of

March 3, 2012 through June 30, 2012.  These requested amounts reflect application of the

negotiated reductions mentioned in paragraph 8 above.  The Court approved and allowed

payment in full on the First Interim Fee Application on August 15, 2012 ("Second Interim Fee

Order") (Docket No. 474).  The total allowed amount was paid by the Debtors to Sidley on

October 18, 2012.

8.      On September 27, 2012, Sidley submitted its *Second Interim Fee*

*Application as Counsel to the Official Committee of Unsecured Creditors* (the "Second Interim

Fee Application") (Docket No. 527) requesting $90,692.45 in fees and $3,803.53 in expenses for

the period of July 1, 2012 through August 31, 2012.  The Court approved and ordered payment

in the aggregate amount of $84,495.98 on the Second Interim Fee Application on November 30,

2012 ("Second Interim Fee Order") (Docket No. 592).  As of the filing of this Final Fee

Application, the amount approved by the Court for payment in the Second Interim Fee

Application was not paid by the Debtors and is currently outstanding.

9.      From September 1, 2012 until February 28, 2013 (the "Pre-Conversion

Period"), Sidley incurred $99,674.95 in fees and $2,037.70 in expenses (applying the negotiated

reductions mentioned in paragraph 8 above).  No fee application was filed for the aggregate

amount of $101,885.80 prior to the filing of the Conversion Order (as defined below).

10.     On February 28, 2013, this Court entered an order converting the Debtors'

cases to cases under Chapter 7 of the Bankruptcy Code (Docket No. 724) (the "Conversion

Order").[2]

---

[2] On December 12, 2012, Sidley submitted its *Third Interim Fee Application as Counsel to the Official Committee of Unsecured Creditors* (the "Third Interim Fee Application") (Docket No. 601) which covered the portion of the Pre-Conversion Period between September 1, 2012 through November 30, 2012.  The Third Interim Fee Application requested $44,032.05 in fees and $685.38 in expenses.  However, on January 2, 2013, Sidley withdrew the Third

B.      **The Chapter 7 Case**

11.      Prior to the claims bar date in the Debtors' cases, Sidley filed proofs of

claims against each of the Debtors as well as a Notice of Administrative Claim (Docket No. 860)

for the total amount of fees and expenses incurred during the Pre-Conversion Period (applying

the negotiated reductions mentioned in paragraph 8 above).  In its Notice of Administrative

Claim, Sidley expressly reserved its rights to file this Final Fee Application.  See Notice of

Administrative Claim at ¶ 12 (Docket No. 860).

12.      The Chapter 7 Trustee appointed by the U.S. Trustee ("Chapter 7

Trustee") undertook an investigation against certain ultimate principals/owners of the Debtors

and their affiliates (collectively, the "Defendants") against whom the Chapter 7 Trustee believed

that the Debtors' Estates likely possessed causes of action under Chapter 5 of the Bankruptcy

Code, as well as under applicable state law.  Additionally, the Chapter 7 Trustee initiated

discussions with INTRUST Bank ("INTRUST") regarding certain issues in dispute.  The

Chapter 7 Trustee, Defendants and INTRUST entered into a global settlement resolving these

disputed issues, this resolution were incorporated into a single settlement agreement (the

"Settlement").  A hearing was held on the Settlement[3] on June 11, 2014 and the Court entered an

order approving the Settlement on June 23, 2014 (the "Settlement Order") (Docket No. 1070).

C.      **Relevant Terms of the Settlement Order**

13.      Pursuant to the Settlement Order, the Defendants agreed to pay

$2,200,000 (the "Settlement Proceeds") to fully and finally resolve any and all causes of action

---

Interim Fee Application (Docket No. 634) and it was never heard nor considered by the Court.  Those amounts
requested in the Third Interim Fee Application have been incorporated into this Final Fee Application.

[3] The Chapter 7 Trustee, through his Special Counsel (Sidley), filed his *Chapter 7 Trustee's Motion for an Order (I)
Approving a Global Settlement Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure; and (II)
Establishing a Bar Date and Noticing Procedures for Holders of Certain Employment Related Claims* (the "9019
Motion") on May 21, 2014 (Docket No. 1056).

4

the Chapter 7 Trustee may have against each of them.  See Exhibit B to the 9019 Motion.

14.    The Settlement Order further resolves all disputes between INTRUST and the Chapter 7 Trustee with respect to the validity, amount and priority of INTRUST's pre-petition secured, DIP financing and adequate protection claims against the Estates in a manner that permits the Chapter 7 Trustee to make distributions(s) to creditors other than INTRUST via an agreement with INTRUST to subordinate its liens.  Id.

15.    In order to facilitate the foregoing, INTRUST has agreed, after a payment of $500,000, to subordinate its lien on the remainder of the Settlement Proceeds to permit the Chapter 7 Trustee to distribute such proceeds (i) to Special Counsel[4] in an amount not to exceed $500,000; (ii) fund the Employee Pool (as defined in the Settlement Agreement); and (iii) make distributions pursuant to the Bankruptcy Code.  Id.

16.    In addition, INTRUST will be entitled to receive 42.5% of the net proceeds (net of the Chapter 7 Trustee's fees and expenses, including attorney fees and expenses, associated with the prosecution and collection of such causes of action) from other preference actions being pursued by the Chapter 7 Trustee, provided that, the first $250,000 of such recoveries will be distributed to counsel to the Chapter 7 Trustee and Debtors' counsel for (i) approved post-conversion fees of counsel to the Chapter 7 Trustee (up to $50,000) and (ii) pre-conversion fees that would have otherwise be payable from the "carve-out" in the Final DIP Order (up to $200,000) (the "INTRUST Carve-out").  Monies available under the INTRUST Carve-out, totaling not more than $200,000, are to be shared pro rata between Sidley (as counsel to the Committee) and Debtors' counsel to the extent amounts are allowed by the Court for pre-conversion services.  Id.

---

[4] On May 29, 2013, the Bankruptcy Court granted the Chapter 7 Trustee's application to employ Sidley Austin LLP as Special Counsel ("Special Counsel").  Special Counsel to the Trustee agreed to a $50,000 discount on its fees.

## RELIEF REQUESTED

17.      Sidley rendered services on behalf of the Committee from September 1, 2012 through February 28, 2013 (the "Final Fee Application Period").  For the Final Fee Application Period, and as set forth more fully below, Sidley seeks final approval of compensation in the amount of $99,674.95 (as appropriately reduced[5] from $112,690.20 in services billed) and reimbursable expenses in the amount of $2,037.70, for a total of $101,712.65.  Detailed schedules of services rendered and expenses incurred (broken down by matter category) by Sidley during the Final Fee Application Period are attached hereto and incorporated as Exhibits A and B, respectively.

18.      By this Fee Application, Sidley seeks an order: (1) allowing Sidley $99,674.95 (as appropriately reduced from $112,690.20 in services billed) in compensation and $2,037.70 in reimbursable expenses for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code; and (2) authorizing payment to Sidley pursuant to the Settlement Order and Bankruptcy Code.  Sidley acknowledges that its approved fees and/or expenses that are not paid from the INTRUST Carve-out will be administrative expenses against the Debtors' chapter 11 estates and paid according to such priority.

## DISCUSSION

19.      Section 330(a) of the Bankruptcy Code provides, in pertinent part, that:

[T]he court may award . . . reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person . . . and . . . reimbursement for actual, necessary expenses. . . . In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including – (A) the time spent on such services; (B) the rates charged for such

---

[5] These reductions include a 90% reduction for compensation and a separate 50% reduction for non-working travel time.

services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code]; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

20.     The Seventh Circuit Court of Appeals has stated that:

The computation of hourly fees depends on the number of hours "reasonably" expended, the hourly rate of each [professional], the calculation of the time value of money (to account for delay in payment), potential increases and decreases to account for risk and the results obtained, and a complex of other considerations under the heading of "billing judgment."

Kirchoff v. Flynn, 786 F.2d 320, 325 (7th Cir. 1986).  Additionally, other courts of appeal have

recognized that:

[I]t is important for the court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate in retrospect that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the client] would not have enjoyed the success it did had its counsel managed matters differently.

Boston and Main Corp. v. Moore, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

21.     In reviewing the final Fee Application, the Court should be guided by the

Seventh Circuit's instruction to ascertain whether such services were rendered and billed in

accordance with the established market for legal services in similar matters:

[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he was selling his services in the market rather than being paid by court order.

In re Continental Illinois Securities Litigation, 962 F.2d 566, 568 (7th Cir. 1992); see Mann v.

McCombs (In re McCombs), 751 F.2d 286, 288 (8th Cir. 1984) (section 330 "is meant to

encourage high standards of professional legal practice in the bankruptcy courts. . . . Bankruptcy

courts must consider whether the fee awards are commensurate with fees for professional

services in non-bankruptcy cases, thus providing sufficient economic incentive to practice in bankruptcy courts.").

22.    In evaluating the Final Fee Application, the Court should consider the novelty and difficulty of the issues presented, the skill required to perform the legal services properly, the preclusion of other employment caused by Sidley's retention in this case, the customary fees charged in similar cases, the existence of time limits under which the services were rendered, the results obtained, the experience and ability of the attorneys involved, and the amount of awards of compensation in similar cases. See In re Alberto, 121 B.R. 531, 534 (Bankr. N.D. Ill. 1990).

23.    Sidley's hourly rates of compensation for those attorneys and para-professionals during the Final Fee Application Period range from $220 to $825. Those rates are comparable to rates charged by other practitioners having the same amount of experience, expertise, and standing for similar services in this jurisdiction. Sidley consistently and consciously made every reasonable effort to represent the Committee in the most economical, efficient, and practical manner possible. Sidley also provided a 10% reduction on Compensation and a 50% reduction on non-working travel time (described more fully below).

24.    A summary of the compensation requested herein regarding each of Sidley's professionals and para-professionals is set forth below:

| Timekeeper | Title | Year of Bar Admission | Hourly Rate[6] | Total Hours | Total Compensation Requested |
|---|---|---|---|---|---|
| Matthew A. Clemente | Partner | 1998 | $825.00 | 2.5 | $2,062.50 |
| Michael G. Burke | Partner | 2003 | $775.00 | 42.0 | $30,790.00 |
| Brian J. Lohan | Associate | 2004 | $750.00 | 42.1 | $31,325.00 |

---

[6] Certain timekeepers' hourly rates were adjusted effective January 1, 2013. Such adjustments were contemplated and discussed in the Retention Application. The Hourly Rate shown on this chart reflects the highest rate at which a time-keeper was billed during the Final Fee Application Period. As such, straight multiplication of a timekeeper's "Hourly Rate" and "Total Hours" may not equal "Total Compensation Requested."

| Matthew G. Martinez | Associate | 2008 | $625.00 | 0.2 | $125.00 |
|---|---|---|---|---|---|
| Michael G. Gustafson | Associate | 2010 | $525.00 | 89.9 | $44,667.70 |
| Lydia H. Slaby | Associate | 2011 | $400.00 | 3.1 | $1,240.00 |
| Matthew E. Linder | Associate | 2012 | $435.00 | 0.5 | $217.50 |
| Kenley Stark | Legal Assistant | N/A | $255.00 | 0.9 | $229.50 |
| Susan L. Summerfield | Legal Assistant | N/A | $220.00 | 9.5 | $2,033.00 |
| | | | **TOTAL:** | 190.70 | $112,690.20[7] |
| | | | **BLENDED RATE:** | | $590.93 |

25.    No agreement or understanding exists between Sidley and any other person for the sharing of compensation received or to be received in connection with the chapter 11 cases, other than as disclosed or authorized pursuant to the Bankruptcy Code, Bankruptcy Rules, and the Local Rules.

26.    Sidley reserves the right to correct, amend, or supplement this Final Fee Application, including without limitation, to seek payment in the event this Final Fee Application is not approved in full.

## SERVICES RENDERED

27.    This Final Fee Application sets forth in detail the work performed by Sidley and the time spent during the Final Fee Application Period.  All matter categories, except for Travel Time as described below, include a header reflecting the actual fees incurred and the compensation requested by this Final Fee Application following the 10% reduction in Sidley's standard billing rate, as negotiated by the Debtors and discussed in the Retention Application.

28.    Detailed itemizations of all fees incurred (net of discounts described above), divided by matter category, are incorporated in Exhibit A, attached hereto

A.    **Asset Disposition (30060):    Hours: 4.60    Fees: $3,082.50**

29.    Certain time entries in the Asset Disposition matter category were conversations with the Debtors and various creditors concerning aircraft and other equipment

---

[7] The percentage reductions discussed above account for the difference between the actual fee number represented here and the requested fees.

leases.  The Committee monitored all adequate protection motions for appropriateness and

necessity, and engaged with the parties as the need arose to address areas of concern to ensure

the Committee's interests were adequately addressed.

30.     Time entries occurring in January and February of 2013 related to working

to complete the sale of the Debtors' certificate and sales of additional assets.

B.     **Business Operations (30070):    Hours: 6.40    Fees: $3,633.75**

31.     The Business Operations matter category encompassed the work that

Sidley professionals performed in constructively collaborating with Chief Restructuring Officer

Jeff Potter (the "CRO") to help in his management of the Debtors business during the bankruptcy

proceedings.  Specifically, during the Final Fee Application Period the Debtors negotiated two

new labor contracts with two of their unionized employee groups: the Association of Flight

Attendants-CWA, AFL-CIO (the "Flight Attendants") and the Airline Dispatchers, as

represented by Transport Workers Union of America, AFL-CIO (the "Dispatchers").  The

Debtors sought Court approval of both of these collective bargaining agreements (the "CBAs")

with the Bankruptcy Court (See *Notice of Motion for Authority to Enter Into a Collective*

*Bargaining Agreement with the Flight Attendants in the Service of Ryan International Airlines,*

*Inc. as Represented by Association of Flight Attendants—CWA, AFL-CIO* (Docket No. 529);

*Notice of Motion for Authority to Enter Into a New Collective Bargaining Agreement with the*

*Aircraft Dispatchers in the Service of Ryan International Airlines, Inc. as Represented by*

*Transport Workers Union of America, AFL-CIO* (Docket No. 530) (the "CBA Approval

Motions")).  Sidley undertook an evaluation of the salient portions of the CBAs and provided

advice to the Committee regarding the benefit to the Debtors' Estates from the various

concessions of both the Debtors, on one side, and the Flight Attendants and Dispatchers on the

other, and ultimately to any potential recovery by unsecured creditors.

32.     After communication with the Debtors and evaluation of the CBAs, Sidley

determined that the CBAs did add value to the estate.  The Committee did not file any objections

to the CBA Approval Motions and ultimately supported their approval by the Court.

C.     **Case Administration (30080):   Hours: 98.40   Fees: $50,829.75**

33.     The Case Administration matter category primarily included time spent

reviewing incoming pleadings, correspondence, and notices; preparing for and attending Court

hearings on general case matters; corresponding with parties in interest concerning general case

matters; and performing necessary tasks typically associated with a committee representation

(including preparing court filings, maintaining and updating dockets, calendars, and

correspondence files, and retrieving necessary documents).  This matter category also

encompassed time spent analyzing pre-petition transactions of the Debtors.

34.     The Committee, both through Sidley and through its individual members,

has had a constructive relationship with the CRO and have engaged frequently with him via

telephone and e-mail in an effort to progress the Debtors' chapter 11 cases.  The Case

Administration category included time spent on communications in the ongoing dialogue

between the CRO and Sidley since Jeff Potter's appointment to that position.  This category also

included matters which encompass more than one other discrete category.

35.     As the Debtors marketed themselves and their assets for sale, the

Committee and Sidley worked with both the CRO and third parties to attempt to generate interest

in the Debtors' assets, preserve jobs and avoid a liquidation of the Debtors' assets.  These

conversations and meetings were recorded primarily in the Case Administration matter category.

D.     **Fee/Employment Applications (30110):   Hours: 37.2010   Fees: $15,693.75**

36.     This Fee/Employment Applications matter category primarily included the

time spent researching and drafting the Second Interim Fee Application and the Final Fee

Application.  The Second Interim Fee Application covered the time period from July 1, 2012

through August 31, 2012; however, the preparation and drafting of the Second Interim Fee

Application occurred almost exclusively during the Final Fee Application Period, as Sidley noted

in its prior fee application.  The preparations of the Second Interim Fee Application and the Final

Fee Application were primarily handled by associate Mr. Gustafson to ensure cost-efficiency.

37.     The preparation of each fee application reduces the work necessary to

prepare each subsequent fee application.  Sidley's preparation of the Second Interim Fee

Application (as billed in the Final Fee Application) was less costly than preparation of the First

Interim Fee Application (as billed in the Second Interim Fee Application) and the preparation of

the Second Interim Fee Application substantially reduced time and expenses necessary for

preparation of this Final Fee Application.

E.     **Fee/Employment Objections (30120):   Hours: 4.00   Fees: $2,018.25**

38.     The 4.0 hours of time entries spent in this matter category during the Final

Fee Application Period were devoted to the evaluation of the Debtors' retention of Plante and

Moran PLLC as a tax consultant to the Debtors.  See *Debtors' Application for an Interim and*

*Final Order Pursuant to 11 U.S.C. §§ 327(a) and 328 and Bankruptcy Rule 2014 Authorizing the*

*Employment and Retention of Plante & Moran PLLC for Tax Consulting Services Nunc Pro*

*Tunc to March 6, 2012* (Docket No. 489) as well as the multiple fee applications filed during the

Final Fee Application Period, including those of Silverman Consulting (Docket No. 496) and

Ford & Harrison LLP (Docket No. 498).

F.     **Financing (30130):   Hours: 7.80   Fees: $5,062.50**

39.     The time billed to the Financing matter category primarily related to the

Committee's ongoing review of the Debtors' use of cash collateral as well as analysis related to

their debtor in possession financing (the "DIP").  This matter category also included

12

communications between the Debtors' financial advisor, Raymond James & Associates, Inc., and

Sidley (on the Committee's behalf).

40.     The Committee, via Sidley, had been an advocate for the Debtors having

the necessary DIP funds available to operate and position themselves effectively during the

pendency of the bankruptcy.  Certain time entries billed to the Financing matter category related

to conversations between Sidley's professionals and lenders of the Debtors in this advocacy role

and engaging in efforts to identify strategic alternatives to obtain financing.

G.     **Meetings of Creditors (30150):   Hours: 20.10   Fees: $11,054.25**

41.     This matter category included time spent conducting meetings of the

Committee, drafting minutes of Committee meetings, ensuring that the Committee was governed

pursuant to applicable requirements, and addressing inquiries of Committee members with

respect thereto.

42.     As the sale process progressed, the frequency of Committee meeting

increased substantially, as all members were briefed with each new possible sale option and

outcome.

H.     **Litigation (30040):   Hours: 5.70   Fees: $3,825.00**

43.     During the Final Fee Application Period, Sidley attorneys prepared a Rule

2004 Motion and Discovery Requests to be served on ultimate principals/owners of the Debtors

Ronald E. Swenson and Gerald H. Weber, Jr. to obtain information related to potentially

preferential payments and potential fraudulent transfers that occurred prior to the Debtors filing

for Chapter 11 protection.

I.     **Travel Time (30030):   Hours: 6.50   Fees: $2,437.50**

44.     This category encompasses time spent by Sidley attorneys traveling to and

from Rockford, Illinois to attend hearings before the Court in person, as well as any in-person

meetings with the CRO.  Sidley has avoided travel where possible, opting for telephonic

appearances and telephonic communication whenever available.  Travel time for Sidley attorneys

always reflects a fifty percent (50%) discount from Sidley's standard billing rates, in accordance

with an agreement between Sidley and the U.S. Trustee.

## REASONABLE EXPENSES INCURRED

45.    Sidley has incurred expenses of $2,037.70 in connection with its services

rendered to the Committee during the Second Fee Application Period[8] and the Final Fee

Application Period.  The nature of certain expense reimbursement procedures internally at Sidley

did not allow certain expenses incurred during the Second Fee Application Period to be included

in the Second Interim Fee Application.  Sidley is seeking reimbursement of those expenses in

this Final Fee Application.  All expenses in the Final Fee Application represent actual out-of-

pocket costs for items incurred exclusively for the benefit of the Committee, including, but not

limited to, duplicating charges, document delivery services, telephone and conferencing charges,

computer-assisted legal research, and court costs.  Sidley submits that all such expenses are

necessary and actual expenses for the performance of its duties as counsel to the Committee.

46.    Detailed itemizations of all expenses incurred are incorporated in Exhibit

B, attached hereto.  Expenses during the Second Fee Application Period and the Final Fee

Application Period were incurred in the following general categories:

---

[8] The Second Fee Application Period covered the time period from July 1, 2012 through August 31, 2012.  Sidley
requested reimbursement for the vast majority of expenses incurred during this time period in the Second Interim
Fee Application.

| Expense Type | Total Reimbursement Requested |
|---|---|
| Court Costs | $658.00 |
| Travel-Related Expenses (Ground Transportation) | $110.16 |
| Search Services & Electronic Legal Research | $548.01 |
| Document Production | $474.94 |
| Telephone Tolls | $246.59 |

a.      Court Costs Costs:  Sidley incurred $658.00 in assorted court-related expenditures, these are primarily CourtCall costs.  When appropriate and possible, Sidley's professionals attended hearings on the Committee's behalf telephonically, via the CourtCall conferencing service.  Each telephonic appearance incurred a fee, although this fee is significantly less than transportation expenses for a Sidley professional to travel to/from Rockford.

b.      Travel-Related Expenses:  Sidley incurred $110.16 in travel related expenses, specifically ground transportation.  Sidley submits that all travel expenses incurred during the Final Fee Application Period were necessary, reasonable, and reflect prevailing market rates.  Although Sidley's professionals utilized the CourtCall's telephonic hearing attendance service when appropriate, certain hearing circumstances required in-person participation.  In certain instances Sidley's professionals needed ground transportation to ensure their attendance and arranged for such in accordance with Sidley's policies for business travel for bankruptcy and non-bankruptcy matters.  Sidley is not seeking reimbursement for any airfare or travel meals during the Final Fee Application Period.

c.      Search Services & Electronic Legal Research:  Sidley incurred $548.01 in electronic legal research expenses.  The electronic legal research services, including LEXIS, Westlaw, and PACER, allowed Sidley to reduce the time expended in researching complex areas of law and were instrumental in preparing and arguing certain pleadings.

15

Computer research and information search services (including PACER) are charged on a time,

item and/or search-type basis which takes advantage of certain discounts that Sidley is able to

negotiate with the relevant service providers because of Sidley's size and volume of usage.

Sidley's charges for computerized legal research such as Westlaw, Lexis or PACER are based on

a rate that recovers no more than the Firm's costs.

        d.      Undertaken in the Second Fee Application Period, Sidley's

professionals did an extensive review of the Debtors' schedules and statements of financial

affairs and any updates thereto.  The charges for acquiring this data from PACER were billed

during the Final Fee Application Period, and specific dates of search can be determined on

Exhibit B in the "Description" column.

        e.      Document Production:  Sidley incurred $474.94 in various

document production capacities.  When filing pleadings with the Court, the notice procedures

require that hard copies of the pleadings be provided to those individual who have requested

notice but are not receiving electronic notice through the Court's ECF network.  In those

instances, Sidley undertook duplication and delivery of those pleadings.  Similarly, hearing

preparation often necessitated the duplication of all relevant pleadings for dissemination amongst

the participating attorneys.  All costs related to these productions were billed at cost.

        f.      Telephone Expenses: Sidley incurred $246.59 in telephone

expenses, including teleconferencing and long-distance calls.  Sidley conducts Committee

meetings and conference calls with the CRO by telephone, rather than in person, due to the

general geographic dispersion of the Committee members and the high cost and inconvenience

associated with in-person meetings.  Sidley uses a teleconferencing service in order to efficiently

conduct Committee teleconferences.  Additionally, although Sidley professionals strive to utilize

16

e-mail for nearly all communications with Committee members, occasionally time-sensitivity or a genuine unwieldiness of the communication's content will require that Sidley professionals directly contact a Committee member via telephone.  Certain of these communications incur long-distance charges, these charges have been billed at cost.

g.      Sidley does not bill its clients or seek compensation in this Fee Application for certain overhead expenses, such as local telephone calls, secretarial services, and facsimile transmissions.  Such expenses are factored into Sidley's hourly rates.

### BENEFIT TO THE ESTATES

47.      Sidley remained active on all matters in its representation of the Committee during these chapter 11 proceedings, up to and including their conversion to chapter 7.  During the Final Fee Application Period Sidley (and the Committee) focused its efforts on preserving value for the estates, jobs for the employees, and avoiding a liquidation of the Debtors' assets.

48.      Sidley submits that the services rendered during the Final Fee Application Period were beneficial to the estates and unsecured creditors, and that its requested compensation should be approved on a final basis.  Sidley devoted much of its time during the Final Fee Application Period to working with the Debtors' Chief Restructuring Officer Jeff Potter to help the Debtors' businesses generate revenue, cut costs, identify potential purchases, and consummate a sale transaction.  Sidley worked closely with Mr. Potter and the Debtors' financial advisor, Raymond James, to identify potential sources of value to the estate, generate additional liquidity and preserve jobs.  Additionally, Sidley worked with the Debtors' secured lender/DIP lender to advocate for sufficient time and liquidity for the Debtors to allow them to restructure and/or position themselves for other potential opportunities.  Finally, Sidley provided valuable

17

assistance and guidance to the Committee and the constituents it represents, in the furtherance of maximizing value for those parties.

49.      Sidley submits that the aforementioned services, among others, benefited the estates by ensuring that the Debtors' assets were properly preserved and administered, and that the value of the estates are maximized for the benefit of all parties-in-interest.

## **NOTICE**

50.      Pursuant to Bankruptcy Rule 2002(a)(6), twenty-one days' notice of this Fee Application has been provided to: (a) the Debtors and their Counsel; (b) the Office of the United States Trustee; (c) the Trustee; and (d) all parties requesting electronic service pursuant to Bankruptcy Rule 2002.

**WHEREFORE**, Sidley respectfully requests that the Court enter an order in substantially the form attached hereto:

(a)        allowing Sidley, on an final basis, $99,674.95 in compensation for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(b)        allowing Sidley, on an final basis, $2,037.70 in reimbursable expenses for the Final Fee Application Period as chapter 11 administrative expenses of the Debtors' estates pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(c)        authorizing the Chapter 7 Trustee to disperse amounts owed to Sidley on account of fees and expenses approved herein and under the Second Interim Fee Order pursuant to the terms of the Settlement Order;

(d)        and granting such other and further relief as the Court deems just and proper.

Dated: Chicago, Illinois
      September 18, 2015

Respectfully submitted,

SIDLEY AUSTIN LLP

By:    /s/ Matthew A. Clemente     
Matthew A. Clemente
Michael G. Burke (admitted *pro hac vice*)
Brian J. Lohan
Matthew G. Martinez
Michael T. Gustafson
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:  (312) 853-7036

ATTORNEYS FOR OFFICIAL COMMITTEE OF
UNSECURED CREDITORS